**COMMONWEALTH Of Pennsylvania,**
**Appellee**

v.

**Jori BRITT, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 8, 2013.
Filed Dec. 20, 2013.

Michael Wiseman, Philadelphia, for appellant.

Jeffrey M. Krulik, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, DONOHUE, and OTT, JJ.

OPINION BY BOWES, J.:

Jori Britt appeals from the judgment of sentence of life imprisonment with a consecutive five to ten years incarceration that was imposed after a jury found him guilty of first-degree murder, possession of an instrument of crime ("PIC"), and carrying an unlicensed firearm and the court found him guilty of persons not to possess a firearm. We affirm.

Appellant shot and killed Terrill Gillette on April 8, 2007, with a .50 caliber handgun outside a Chinese take-out restaurant on the 5800 block of Germantown Avenue, Philadelphia. The victim was shot seven times in his head and back. Police Officer Rahsaan Price was in the area speaking with a fellow officer, Officer Anagbogu, when he heard two loud shots. Officer Price responded in his vehicle and while driving heard approximately six or seven additional shots. As he approached the scene, Officer Price observed two males fleeing the area and broadcast this information over police radio. He exited his vehicle to pursue the men but stopped after two women exited the Chinese establishment screaming and other officers arrived. He directed Officer Israel Miranda to follow the men as he and Officer Anagbogu secured the scene. The officers discovered the victim lying dead face down in a pool of blood. Seven .50 caliber fired cartridges and one projectile were recovered.

Meanwhile, Officer Miranda and two other officers, Officer George Marko and Officer Joseph Kelly, stopped the two men seen running from the vicinity by Officer Price. Neither of the individuals, Sheldon Cardwell and Shahiem Groover, possessed a weapon, nor were they identified as the shooter; however, they had been present in the Chinese take-out restaurant. Each man was interviewed by police on multiple occasions and provided signed written statements.

Mr. Groover informed police that he was at the Chinese store and witnessed Appellant arguing with the victim outside. He then heard a shot that sounded as if it came from a cannon and saw the victim fall. Mr. Groover told police that Appellant then stood over the victim, fired four or five additional rounds into him, and fled. On April 25, 2007, Mr. Groover also identified a photograph of Appellant as the person who shot the victim. During the trial, Mr. Groover experienced a sudden memory loss and denied seeing Appellant shoot the victim, signing his written statements, or performing photographic identification. Mr. Cardwell also originally identified Appellant as the shooter. However, Mr. Cardwell did not appear at trial and his written statement to police was read to the jury.[1]

An additional witness inside the Chinese take-out business, Marlon McGriff, informed police that while he was awaiting his food, he saw Appellant shoot the victim. Mr. McGriff described the sound emanating from the weapon as the loudest noise he had ever heard. At trial, however, Mr. McGriff claimed that police forced him to state that Appellant shot the victim. Mr. McGriff provided police with a second written statement in the presence of his attorney. He maintained that the second statement also was procured under duress. According to Mr. McGriff's trial testimony, he did not know Appellant or sign his

---

1. Mr. Cardwell did testify at Appellant's preliminary hearing, and admitted signing his statement to police. Preliminary hearing counsel took advantage of his opportunity to cross-examine Mr. Cardwell regarding his statement.

written statements to police, was intoxicated at the time he gave his initial statement to police, and could not remember what happened.

Police also recovered a videotape from the Chinese take-out restaurant that depicted the incident. The video revealed that neither Mr. Groover nor Mr. Cardwell was the shooter. It showed Mr. Groover and Mr. McGriff inside the restaurant when the shooting occurred.

Police also interviewed the two women at the scene. One woman, Chafarra Clemons, could not be located for trial and did not testify. Her interview with police was read to the jury by the officer who questioned her.[2] Ms. Clemons' statement indicated that the shooter fired six or seven shots and was wearing a dark brown coat.

Police did not capture Appellant for approximately two years, until he was ultimately arrested in New York. Prior to trial, Appellant submitted a *pro se* motion for continuance complaining of trial counsel's representation. Specifically, he averred that trial counsel had not adequately met with and interviewed him or any potential witnesses. Appellant averred that trial counsel did not meet with him until July 7, 2011, despite the court's June 2010 appointment of him. He maintained that his family was unable to contact counsel for that period and his attorney did not interview any witnesses, including an alibi witness.[3]

The court addressed the *pro se* filing on the record with trial counsel before commencement of trial on July 11, 2011. Trial

counsel set forth that he had met with his client in October of 2010, spoke with his client on July 10, 2011 regarding the alibi witness and that his investigator was attempting to locate the witness. Counsel related that he was prepared for trial, and trial proceeded. During trial, counsel presented the testimony of his investigator as well as Appellant's former girlfriend. Appellant did not testify after an on-the-record colloquy and indicated that he was satisfied with counsel's advice related to his decision not to testify. However, he reiterated that his earlier complaints remained.

Following a six-day trial, the jury returned a guilty verdict for the charges of first-degree murder, PIC, and carrying an unlicensed firearm on July 18, 2011. After the jury verdict, the court also adjudged Appellant guilty of the charge of persons not to possess a firearm. The court permitted trial counsel to withdraw on September 20, 2011, and continued the sentencing. New counsel was appointed on September 26, 2011. The court sentenced Appellant to the mandatory term of life imprisonment on February 2, 2012, and an additional five to ten years incarceration for the conviction of persons not to possess a firearm. Current counsel entered an appearance on February 28, 2012, and filed this timely appeal.

The court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on May 24, 2012. Appellant sought, and was granted,

2. The defendant introduced the statement and not the Commonwealth.

3. The parties and court conducted jury selection on July 7, 2011 and July 8, 2011. Appellant also complained during *voir dire* regarding the same issues in his motion; however, the notes of testimony from *voir dire* are not part of the certified record. Appellant pro-

vides the notes of testimony from the July 8, 2011 proceeding in his reproduced record. Where the accuracy of the document in question is not disputed, the court may consider the transcript when it is contained in the reproduced record. *See Commonwealth v. Brown*, 617 Pa. 107, 52 A.3d 1139, 1145 n. 4 (2012).

two extensions and submitted his concise statement on September 12, 2012. The court authored its Pa.R.A.P. 1925(a) decision and the matter is now ready for our review. Appellant presents two issues for this Court's consideration.

    I.  Did the lower court err in denying Appellant's *pro se Motion* requesting a continuance and the appointment of new counsel, when the record shows that trial counsel, who was appointed to this case for twenty months, met Appellant one time 13 months before trial for an introduction and to provide him with discovery, did not meet Appellant again until the first day of voir dire, where counsel had performed no work on Appellant's case during the pre-trial period, and where counsel had a disciplinary history of neglecting his clients?

    II.  Did the lower court err in denying the above motion when counsel's neglect of his client resulted in a constructive deprivation of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution?

Appellant's brief at 2.

■ Although Appellant sets forth two issues, his argument is that he was constructively denied counsel rendering counsel *per se* ineffective in this matter. In support of his position, Appellant avers that the effective assistance of counsel is vitally necessary during pre-trial proceedings. Relying principally on *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), he contends that this Court should presume prejudice herein. He maintains that trial counsel failed in his

duty to consult with him and "violated a host of provision contained in the *ABA Standards* [.]" Appellant's brief at 14. Specifically, he argues that counsel did not establish a relationship with him, interview him, keep him informed, take prompt action to protect his rights, or investigate this matter.

Appellant asserts that *Commonwealth v. Brooks,* 576 Pa. 332, 839 A.2d 245 (2003), is particularly analogous. He notes that the *Brooks* Court opined that, "in order to prepare a defense to a charge of murder in the first degree, it is essential that at the very least, counsel meet with his client in person to, inter alia, gather information from the client, evaluate the client's demeanor, and try to establish a working relationship." Appellant's brief at 15–16 (quoting *Brooks, supra* at 250). Appellant acknowledges that the Supreme Court in *Brooks* applied the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), ineffectiveness test, but asserts that the Court presumed prejudice. *See Brooks, supra* (Castille, J. concurring).

In *Brooks,* the Pennsylvania Supreme Court relied on the *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003) exception to *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), and reviewed ineffective assistance of counsel claims during a capital direct appeal. The *Brooks* Court found trial counsel ineffective for never meeting with his client in person and only having a twenty-to-thirty-minute conversation with his client before trial. Indeed, Brooks represented himself during a suppression hearing, opening statements, and the first day of trial based on the complete breakdown in the attorney/client relationship.

Justice Castille concurred in the result, but highlighted that the majority had not undertaken a *Strickland* analysis and con-

tended that the majority improperly adopted a prophylactic approach. He pointed out that Cronic's per se prejudice occurs only where the defendant is effectively unrepresented at critical stages of the criminal proceedings. In this respect, he agreed that Brooks was "one of those rare 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Id.* at 255. Justice Eakin also concurred in Brooks, but set forth that he did so under the Strickland test and disagreed in that the majority essentially created a separate standard for capital cases.

More recently, the Pennsylvania Supreme Court revisited the *Brooks* decision in *Commonwealth v. Elliott,* —— Pa. ——, 80 A.3d 415 (2013), a PCRA appeal. The *Elliott* majority ultimately concluded that the defendant had waived his *Brooks* claim. Chief Justice Castille joined in full, but authored a concurring opinion expressing his view that *Brooks* must be limited to its precise facts. Justice Eakin also penned a secondary opinion, reiterating his view that the proper standard for such situations is *Strickland.* According to Appellant, under either a *Cronic* or *Strickland* analysis, his trial counsel's performance prejudiced him.

Appellant continues that "the trial court failed to protect Appellant's right to counsel when it neglected to conduct any inquiry into [trial counsel's] readiness for trial, or what actions, if any, he took pre-trial to advance Appellant's interests." Appellant's brief at 17. He submits that the trial court's reliance on *Commonwealth v. Johnson,* 51 A.3d 237 (Pa.Super.2012) (*en banc* ), was improper because *Johnson* did not address pre-trial constructive deprivation of counsel. The Commonwealth responds that Appellant's *per se* ineffectiveness arguments cannot be reviewed on direct appeal absent a waiver of PCRA review, and that this case does not fall within the limited category of *Cronic per se* ineffectiveness claims.

In *Cronic,* the federal government charged the defendant with mail fraud after a four and one-half year investigation. The defendant originally retained private counsel, however, that attorney withdrew. Less than one month before trial, the court appointed a real estate attorney with little criminal law experience who had never taken a criminal case to trial. A jury convicted the defendant. During direct appeal, the Tenth Circuit Court of appeals reversed, "based upon the time afforded to the lawyer to prepare, his inexperience, the gravity of the charges, the time the government took to investigate the matter, and the complexity of possible defenses." *Commonwealth v. Brown,* 18 A.3d 1147, 1155 (Pa.Super.2011) (citing *Cronic, supra* ).

The United States Supreme Court, on the same date that it decided *Strickland,* reversed and instructed that the test in *Strickland* should apply. Nonetheless, it also opined that there are limited "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic, supra* at 658, 104 S.Ct. 2039. It reasoned that a presumption of prejudice, *i.e., per se* ineffectiveness, can be found "where the accused is denied an attorney or prevented from consulting one at a critical stage of trial or where 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[.]'" *Brown, supra* at 1155 (quoting *Cronic, supra* at 659, 104 S.Ct. 2039).

In Pennsylvania, *per se* ineffectiveness under *Cronic* occurs "where there was an actual or constructive denial of counsel, the state interfered with counsel's assistance, or counsel had an actual con-

flict of interest." *Commonwealth v. Reaves*, 592 Pa. 134, 923 A.2d 1119, 1128 (2007). In *Brown, supra,* we collected cases that outlined the various situations where counsel has been held to be *per se* ineffective. In *Commonwealth v. Halley*, 582 Pa. 164, 870 A.2d 795 (2005), our Supreme Court concluded that counsel who fails to file a Pa.R.A.P. 1925(b) statement for purposes of a first as-of-right direct appeal is *per se* ineffective. *Compare Commonwealth v. Hill*, 609 Pa. 410, 16 A.3d 484 (2011) (failure to file a 1925(b) statement for purposes of capital PCRA review resulted in waiver). Similarly, in *Commonwealth v. Burton*, 973 A.2d 428 (Pa.Super.2009), this Court determined that counsel's filing of an untimely Pa. R.A.P. 1925(b) statement was *per se* ineffective.

In addition, the failure to file a requested petition for allowance of appeal, *Commonwealth v. Liebel*, 573 Pa. 375, 825 A.2d 630 (2003), or neglecting to file a requested direct appeal, *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564, 572 (1999), has been considered to be a constructive denial of the right to counsel. The Pennsylvania Supreme Court also has opined that the failure to file an appellate brief constitutes abandonment of counsel and is a newly-discovered fact for purposes of PCRA timeliness considerations. In the PCRA arena, where counsel fails to file either an amended PCRA petition or a *Turner/Finley* no-merit letter, we have determined that counsel constructively denied his client representation. *See Commonwealth v. Burkett*, 5 A.3d 1260, 1277 (Pa.Super.2010) (collecting cases). These situations all involve representation so deficient that the defendant was either completely or constructively denied counsel or entirely denied meaningful merits review.

■ Instantly, Appellant was neither entirely deprived of counsel, nor constructively denied meaningful merits review. Counsel also did not entirely fail to subject the prosecution's case to meaningful adversarial testing. *See Brown, supra* at 1155. Appellant certainly may have viable ineffectiveness claims based on the traditional ineffectiveness test. However, where the arguments involve an attorney's failure to adequately prepare based on neglecting to substantively meet with his client, interview witnesses, or investigate the matter, counsel is generally not considered *per se* ineffective.

Pointedly, we have treated a similar claim as falling within the umbrella of *Strickland* ineffectiveness matters that are to be raised in a PCRA petition. *See Johnson, supra.* To the extent Appellant maintains that *Johnson* did not involve pre-trial deprivation of counsel, he is simply mistaken. The argument in *Johnson* was almost identical to that presented herein and relied extensively on *Brooks, supra.* Johnson asserted that prior to trial, his attorney failed to substantively meet with him and discuss his case. This author joined our learned colleague Judge David Wecht in his concurring opinion criticizing the adequacy of the performance of counsel leading up to trial. However, all judges in *Johnson* agreed that the proper standard required the petitioner to demonstrate actual prejudice based on counsel's lack of pre-trial preparation.

More importantly, in *Commonwealth v. Holmes*, —— Pa. ——, 79 A.3d 562 (2013), the Pennsylvania Supreme Court revisited the *Bomar* exception and held that, absent either good cause or exceptional circumstances and a waiver of PCRA review, ineffective assistance of counsel claims must await collateral review. *See also Commonwealth v. Barnett*, 25 A.3d 371 (Pa.Super.2011) (*en banc*). The *Holmes* Court provided that exceptional circumstances could exist where "a claim (or

claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted." *Holmes, supra* at 577. However, the facts of this case do not fall within that category of issues, as it involves non-record-based claims, nor has Appellant waived PCRA review. Therefore, he cannot seek review of his ineffectiveness claims on direct appeal.[4]

■ Insofar as Appellant maintains that the trial judge erred in declining to grant his *pro se* motion for continuance, we note that generally defendants are not entitled to hybrid representation. *Commonwealth v. Nischan,* 928 A.2d 349, 355 (Pa.Super.2007) (*pro se* post-sentence motion a nullity); *Commonwealth v. Ali,* 608 Pa. 71, 10 A.3d 282 (2010) (*pro se* 1925(b) statement a nullity). Further, "[t]he grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion." *Commonwealth v. Boxley,* 596 Pa. 620, 948 A.2d 742, 746 (2008). An abuse of discretion is "not merely an error of judgment; rather discretion is abused when 'the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.' " *Id.*

In *Commonwealth v. Ross,* 57 A.3d 85 (Pa.Super.2012) (*en banc*), we reversed a trial court's decision to deny a counseled motion for continuance. In *Ross,* the Commonwealth charged the defendant with first-degree murder, aggravated assault, involuntary deviate sexual intercourse, unlawful restraint, simple assault, false imprisonment, and indecent assault. The Commonwealth provided notice that it was going to seek the death penalty. The court appointed counsel for Ross; however, he was unhappy with that attorney's representation and sought his removal. After the court denied Ross's request for a new attorney, Ross hired private counsel. That attorney was retained two weeks prior to jury selection in a capital case.

Newly-retained counsel asked for two continuances shortly before trial. Counsel contended that he had been unable to sufficiently prepare. The court denied those requests, but did authorize funds for counsel to retain a criminologist. On the date of trial, counsel again asked for a continuance. He pointed out that his expert criminologist had not had an opportunity to review all of the Commonwealth's evidence, some of which the expert had yet to receive. The trial court denied Appellant's continuance and the matter proceeded to trial. The Commonwealth presented ten expert witnesses, and the jury convicted the defendant of the aforementioned charges, though it declined to return a death verdict.

In a five-to-four decision, this Court reversed. The majority highlighted the complexity of the case, and the fact that Ross's expert witnesses had insufficient time to prepare their reports.

Instantly, the trial court inquired of counsel as to his ability to proceed. Counsel, in opposition to Appellant's claims, as-

---

4. Appellant included within his brief documents that are not part of the certified record regarding disciplinary action due to trial counsel's inadequate representation in other cases. He also filed a request for a post-submission communication based on a recent disciplinary action taken as a result of counsel's lack of adequate representation in other matters. We deny Appellant's application for post-submission communication since our disposition defers his claims to PCRA review. However, insofar as trial counsel's disciplinary history is a matter of public record, we are cognizant of trial counsel's official disciplinary history.

serted that he was prepared to try the matter. He noted that he had met with Appellant well before trial, that his private investigator was looking into Appellant's proffered witnesses, and that a continuance was not warranted. We decline to find an abuse of discretion in denying the *pro se* continuance or that the trial judge did not meaningfully inquire into counsel's readiness.

Judgment of sentence affirmed.

