J.S52005/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
   :      PENNSYLVANIA
              Appellee    :
   :
        v.    :
   :
   :
EDWARD DUNPHY,    :
   :
              Appellant    :    No. 35 EDA 2013

Appeal from the PCRA Order December 14, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0010374-2008

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED MARCH 05, 2015**

Appellant, Edward Dunphy, appeals from the order entered in the Philadelphia County Court of Common Pleas, dismissing his timely first Post Conviction Relief Act[1] ("PCRA") petition. He alleges the PCRA court erred by dismissing his petition alleging trial counsel's ineffectiveness without an evidentiary hearing. We vacate and remand for an evidentiary hearing.

We state the facts as set forth by a prior panel of this Court:

> On June 7, 2008, at approximately midnight, Appellant was driving his vehicle while intoxicated, striking and killing a 20 year old pedestrian, Hannah Cintron, as she was crossing the northbound lanes of Delaware Avenue, a

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9545.

six-lane divided highway with a speed limit of 35 miles per hour. Cintron suffered multiple, severe blunt impact injuries to her head, torso, and legs, sustaining a fractured hip, a fractured rib, a broken back and a ruptured aorta. Cintron was pronounced dead at the scene. As a result, Appellant was arrested and charged with murder in the third degree, 18 Pa.C.S.A. § 2502(c); involuntary manslaughter, 18 Pa.C.S.A. § 2504(a); homicide by vehicle, 75 Pa.C.S.A. § 3732; homicide by vehicle while driving under the influence, 75 Pa.C.S.A. § 3735(a); accident involving death or personal injury, 75 Pa.C.S.A. § 3742; and driving under the influence of alcohol, 75 Pa.C.S.A. § 3802(a)(1).

On July 14, 2009, Appellant proceeded to a trial before a jury. At trial, Dennis Wright, a valet employed at Roxxy nightclub in the 900 block of North Delaware Avenue, testified that, shortly after midnight on June 7, 2008, he heard the sound of a truck suddenly accelerating. He looked towards the sound, and observed Appellant driving north on Delaware Avenue at approximately 60 miles per hour. He also observed the victim, Hannah Cintron, walking across the northbound lanes of Delaware Avenue, in the lane closest to the median strip. Wright witnessed Appellant's truck slam into Cintron, causing her to fly into the air, land on the hood of his truck, fly off the truck, and then land on the street. Wright testified that, after the impact, Appellant's truck braked briefly, swerved into the middle lane, and then sped away at an even greater speed, without ever coming to a complete stop.

Joseph Stickel, who, at the time of the accident, was standing on the median strip separating Delaware Avenue, testified that he witnessed Appellant's truck come around the corner, hit Cintron, and then keep going. Stickel stated that he heard "someone slamming on their brakes, and [he] looked up and [Cintron] got hit." Based on Appellant's truck hitting Cintron, Stickel observed Cintron's body fly down the road and over the truck, and then land in the middle of the road.

After Appellant's truck hit Cintron, Robert DeGuzman, who was working a security detail at Roxxy nightclub, entered his vehicle in an attempt to locate the person who

hit Cintron. When he reached Interstate 95, he came upon Appellant's truck, which matched the description of the truck that hit Cintron, and he began to follow it. DeGuzman testified that Appellant was swerving through traffic. When Appellant stopped at a house at the corner of Madison and Tilton Streets, DeGuzman ordered Appellant out of the truck and handcuffed him. DeGuzman stated that Appellant smelled strongly of alcohol, and Appellant said, "I'm sorry, I didn't mean to do it. I'm drunk." DeGuzman observed that Appellant's truck was damaged on the driver's side, including the windshield, which was "squashed all the way down."

Officer Michael DeRose arrived at Madison and Tilton Streets after DeGuzman had stopped Appellant. DeRose testified that, when he arrested Appellant, he noticed a very strong odor of alcohol on Appellant. Further, he stated that Appellant "kept saying over and over and over again that he was sorry."

After Appellant was arrested, Officer Robert Reppert interviewed him. Reppert testified that Appellant consented to a blood test, which was performed at 1:40 a.m. He further testified that he questioned Appellant about the incident and that, Appellant stated that he had been at McFadden's Bar and had consumed "several shots and several beers" over the course of two or three hours. Appellant further stated to Reppert that he then got into his truck and headed to his cousin's house because he "didn't think [he] could make it home." Appellant told Reppert that, as he was driving on Delaware Avenue, he saw pedestrians crossing the street approximately 50 to 100 yards in front of him, but he accelerated to "make the next light." When asked if he struck any people with his truck, Appellant stated, "Not to my knowledge, no, sir." Appellant admitted to Reppert that his truck had not been damaged earlier in the evening.

Richard D. Cohn, Ph.D., testified as an expert for the Commonwealth in the areas of pharmacology and forensic toxicology. Cohn testified that Appellant's blood alcohol content was .183% at the time his blood was drawn. Cohn concluded that Appellant would have consumed a minimum of ten or eleven drinks for his blood alcohol to be

.183% at the time his blood was drawn. Cohn further testified that, in his opinion, Appellant was incapable of safely operating a vehicle.

Officer William Lackman of the Philadelphia Police Department's Accident Investigation Division testified as an expert on accident reconstruction on behalf of the Commonwealth. Lackman testified that Citron's body came to rest about 178 feet north of where she was originally hit by Appellant's truck, and that she was either airborne or on the hood of the truck for 135 feet. Lackman stated that the Airbag Control Module of Appellant's truck confirmed that he was traveling between 59 and 60 miles an hour when he hit Cintron, and that Cintron was traveling approximately 50 miles per hour when she flew off the hood of the truck. Lackman further stated that there were skid marks at the scene, which indicated that Appellant applied his brakes after striking Cintron, but never came to a complete stop. Lackman concluded that Appellant's truck striking Cintron caused her death.

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1217-18 (Pa. Super. 2011) (citations and footnote omitted).

We add that during his opening argument, Appellant's counsel argued Appellant was guilty "beyond a reasonable doubt" of homicide by vehicle while driving under the influence, accidents involving personal injury or death, and driving under the influence. N.T., 7/14/09, at 49-50. Mid-trial, based upon perceived conflicting evidence, Appellant's counsel stated he may retract his opening argument and argue Appellant was innocent of homicide by vehicle. N.T. Trial, 7/15/09, at 114. The trial court was less than pleased and, at sidebar, expressed apparent frustration at what it believed was counsel's lack of preparation:

The court: Well, the problem I have is the way you opened to the jury in this case, you took a lot of issues out of the case. And one of the issues you took out of the case was causation.

[Commonwealth]: Right.

The court: You didn't tell the jury that at the end of the case you were going to ask them to find that it wasn't because he was drunk that he hit the pedestrian; that it was because he was speeding that he hit the pedestrian; that being drunk had nothing to do with it. You didn't say that.

You said, "At the end of the case you're going to find beyond a reasonable doubt that he's guilty of homicide by vehicle while DUI," which carries—remember I asked you, does your client know that's a mandatory three to six years? And you said, yes, you had discussed that with him.

Now I don't know what to colloquy him on exactly because I don't know what his perception is of what you're doing. And I'm not sure what you're doing, [Appellant's counsel]. You seem to have put an issue back in the case, or try to.

In other words, we can put the issue back in the case, we can ask the jury to decide it and to disregard—you can ask the jury; I wouldn't. I'll just charge them on the law but to disregard what you said earlier. And I have to now figure out with your client when I colloquy him, is he to say he understands all this?

[Appellant's counsel]: We've discussed it completely, Your Honor.

The court: That now he understands that you're trying to put an issue in the case that you originally admitted to the jury?

[Appellant's counsel]: Yes, he does, Your Honor.

\* \* \*

The court: . . . I mean, this is the first time you figured out that maybe you could argue that it wasn't the alcohol, it was the speed?

[Appellant's counsel]: Your Honor, I—I really can say that it was as the testimony was coming about that I realized that his calculation was from 300 feet away, but there was a possibility that from the statement that it was 150 feet away. And when that calculation is made, it only leaves ten feet—if the jury assumes that it was actually 150 feet away, it only leaves ten feet for the avoidance of an accident.

The court: What was only 150 feet away?

[Appellant's counsel]: If the range that [Appellant] gave that he said he observed people on the roadway was 50 to a hundred yards and Officer Lackman indicated that that was 150 to 300 feet—

The court: Yes.

[Appellant's counsel]: —all Officer Lackman's assumptions were based on 300 feet.

The court: [Appellant's] statement.

[Appellant's counsel]: Right.

The court: Yes.

[Appellant's counsel]: But if the jury believes that it was 150 feet away and that—

The court: On what basis would they believe that?

[Appellant's counsel]: It was, according to [Appellant], 50 yards, which would be 150 feet, or 300 feet.

The court: Yes.

[Appellant's counsel]: If they reject that it was 300 feet away.

- 6 -

The court: But you always had your client's statement, so you always knew that calculation; yes?

[Commonwealth]: [Appellant] said in his statement he saw the pedestrians in the road 50 to a hundred yards away.

The court: Yes.

[Commonwealth]: So [Appellant] perceived the hazard in the road. This isn't a situation that he didn't perceive it.

The court: No. I just don't understand why having had these numbers from the day you [*i.e.*, Appellant's counsel,] first got your client's statement, which was in the first discovery packet, which was at the time of his arrest—

[Appellant's counsel]: I didn't have the conclusion, Your Honor, that it was 87.9 feet per second, which would translate into 140 feet at 1.6 seconds of delay time.

[Commonwealth]: He had 300 feet of notice that there were people crossing the road. He didn't react.

[Appellant's counsel]: 150 to 300 feet, whichever the jury decides is accurate.

The court: Well, it's his own testimony.

[Commonwealth]: Right. It's his statement; that he perceived the danger in the road.

The court: But I just don't understand why you didn't see this possibility of arguing this a long time ago and avoid this problem that we now have of where are we in this case.

What are the charges that he's admitting?

I take it he's admitting to leaving the scene of the accident; he's admitting to DUI; and he's admitting to— that's it. And that the other two charges you think should go to the jury for their decision. And then you're asking for an involuntary manslaughter charge.

[Appellant's counsel]: Yes, Your Honor.

The court: On the basis that it could have been the shorter distance.

[Appellant's counsel]: Yes.

The court: And then you think you can argue to the jury that if it was the shorter distance, nobody could have avoided the accident?

[Appellant's counsel]: That's what my argument will be, Your Honor, yes.

The court: All right.  Let's go.  And you can make your motion and I'll do the colloquy.

[Appellant's counsel]: Yes.

*Id.* at 117-24 (capitalization omitted).

On July 15, 2009, after the parties presented their evidence and arguments to the jury, Appellant pleaded guilty to driving under the influence of alcohol and accident involving death or personal injury.  The jury subsequently found Appellant guilty of third degree murder.  On September 16, 2009, the trial court sentenced Appellant to seven to fourteen years' imprisonment for third degree murder; a consecutive term of one to two years' imprisonment for accident involving death or personal injury; and sixth months' probation for driving under the influence of alcohol, to be served concurrently with his other sentences.

*Dunphy*, 20 A.3d at 1218.  Appellant appealed, and this Court affirmed on May 6, 2011.  *See id.*  Appellant did not file a petition for allowance of appeal with our Supreme Court.

On April 13, 2012, Appellant timely filed a counseled PCRA petition. On October 26, 2012, the PCRA court issued a Pa.R.Crim.P. 907 notice.  On

November 30, 2012, the PCRA court heard arguments on its Rule 907 notice. On December 17, 2012, the PCRA court dismissed Appellant's PCRA petition. Appellant timely appealed. The PCRA judge retired on December 31, 2012, and the case was reassigned to a new judge.

On January 23, 2013, the PCRA court ordered Appellant to comply with Pa.R.A.P. 1925(b) within twenty-one days. Appellant's PCRA counsel filed an untimely Rule 1925(b) statement on February 27, 2013.[2] Because the PCRA judge had retired at the end of 2012, a responsive Rule 1925(a) decision was not prepared.

Appellant raises the following issue:

> Whether, in violation of the United States and Pennsylvania constitutions, the PCRA court erred in dismissing [Appellant's PCRA] petition on grounds of ineffective assistance of counsel without an evidentiary hearing?

Appellant's Brief at 2.

Appellant contends that the PCRA court should have held an evidentiary hearing when the trial court announced at trial that his counsel failed to prepare for trial and was causing the jury to be confused with an abrupt change of defense strategy. *Id.* at 22. Appellant maintains that the record reflects trial counsel had no excuse for his confusion and lack of

---

[2] We decline to find waiver, however. *Cf. Commonwealth v. Britt*, 83 A.3d 198, 203 (Pa. Super. 2013) (holding untimely filing of Rule 1925(b) statement by counsel is *per se* ineffective assistance of counsel).

preparation. He insists trial counsel was ineffective for failing to object to the trial court's mid-trial guilty plea colloquy as counsel was unprepared for trial. We hold Appellant is due limited relief, as set forth below.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1267 (Pa. 2008). With respect to claims of counsel's ineffectiveness, we state the following as background:

> [C]ounsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

*Commonwealth v. Perry*, 959 A.2d 932, 936 (Pa. Super. 2008) (punctuation marks and citations omitted). Our Supreme Court has made "clear this Court's strong preference that counsel be heard from before being found ineffective." *Commonwealth v. Colavita*, 993 A.2d 874, 895 (Pa. 2010).

In determining whether counsel's action was reasonable, the court does not consider "whether there were other more logical courses of action"

counsel could have pursued, but simply examines whether counsel's decision had any reasonable basis. **Commonwealth v. Washington**, 927 A.2d 586, 594 (Pa. 2007). Conversely, to merit relief, counsel's action, given all the other available alternatives, must be "so unreasonable that no competent lawyer would have chosen it." **Commonwealth v. Miller**, 431 A.2d 233, 234 (Pa. 1981) (citation omitted).

A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim. **Washington**, 927 A.2d at 594. "In the context of a PCRA proceeding, [the defendant] must establish that the ineffective assistance of counsel was of the type 'which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" **Id.** (citations omitted). The defendant must establish actual prejudice, or demonstrate that the alleged act of ineffectiveness falls within a narrow range of circumstances in which there is a presumption of prejudice. **Commonwealth v. Reed**, 971 A.2d 1216, 1224-25 (Pa. 2009).

Given the unique set of facts and trial counsel's strategy, as set forth above, and the absence of any PCRA court opinion, out of an abundance of caution, we think it prudent to remand for an evidentiary hearing at which trial counsel can testify. **See Colavita**, 993 A.2d at 895; **see also Washington**, 927 A.2d at 594; **Miller**, 431 A.2d at 234. The PCRA court

shall also render its findings and conclusions on the record and prepare a written opinion.

Order vacated. Case remanded for an evidentiary hearing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/5/2015</u>