J-A13022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CODY ANTHONY CATERINO, | |
| Appellant | No. 383 WDA 2014 |

Appeal from the Judgment of Sentence Entered September 17, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0008487-2012

BEFORE:  PANELLA, SHOGAN, and OTT, JJ.

MEMORANDUM BY SHOGAN, J.:                      **FILED JUNE 5, 2015**

Appellant, Cody Anthony Caterino, appeals from the judgment of sentence entered following his convictions of burglary, robbery, and criminal conspiracy.  We affirm.

The trial court summarized the history of this case as follows:

On April 25, 2012, [Victim, a female,] resided . . . in Squirrel Hill with her mother and her boyfriend.  There are three floors on this residence; when you enter the home there is a living room, dining room and kitchen; upstairs there is a bathroom and two bedrooms; and on the third floor there is a third bedroom in the attic.  [Victim] was home alone in the third floor bedroom at approximately 7:30 P.M. on April 25, 2012.  As [Victim] was watching a movie she heard two male voices downstairs.  She assumed that the voices were coming from her boyfriend and his friend.  Then the voices lowered to a whisper as she heard them come up the stairs to the third floor.  [Victim] was sitting on her bed when she saw two males dressed in black at the top of the steps, wearing knit hats and something covering part of their face.  [Victim] could see the area around the bridge of [Appellant's] nose, his eyes and part of his forehead.

[Appellant] then approached [Victim and] asked where her boyfriend's stuff was. [Appellant] was standing right in front of [Victim] and the other man was beside her when [Appellant] pulled out a gun. At this time [Victim] realized that the man was [Appellant].

[Appellant] was less than five (5) feet away from [Victim] when he told her to get down. According to [Victim] she said "No" and [Appellant] proceeded to push her onto her bed and put the gun to her head. [Victim] was facing him and told [Appellant] she knew who he was, and asked him to stop. Again, [Victim] testified that as they were face to face she realized he was [Appellant].

[Victim] stated she recognized [Appellant] because of her knowledge of him from High School with his distinct crooked nose and voice. [Appellant] testified that he had surgery on his nose a few weeks after graduation, approximately a year before this Robbery. However, in her closing, Assistant District Attorney, Carroll pointed out that the photo-array admitted into evidence exhibits a pretty distinctive bend in [Appellant's] nose.

During the assault, the other man was grabbing money and marijuana that they were stealing. This entire event occurred within approximately fifteen (15) minutes. As this assault and robbery was occurring, [Victim] repeatedly told [Appellant] that she knew who he was and to stop. [Appellant] pulled the cover over her face and pushed the gun harder to her head. At that time, [Victim] was afraid to tell [Appellant] that she knew [his name], because she thought he may kill her. [Victim] heard the other man state that he got it, and then [Appellant] got off of [Victim]. She ripped the blanket from over her head and [Appellant] and the other man were already down the steps.

When the Police arrived to take the report, she told them that she was 110% sure that the one man was [Appellant]. The day after the Robbery, [Victim] spoke with Police and again stated that she knew the one male to be [Appellant]. On a separate occasion, [Victim] spoke with Officer Gray, and again stated that she knew [Appellant] from High School. [Victim] told Officer Gray that as events went on during the Robbery, she was positive that it was [Appellant]. Subsequently, [Victim] picked

[Appellant] out of an array and she was very adamant that it was him.

Confronted, [Victim] told the Officers that [Victim] had a class with a girlfriend of [Appellant's] in [Victim's] junior year of High School. She stated [Appellant] never spoke to her in High School, however, [Victim] overheard conversations between [Appellant] and his girlfriend, and could hear his voice.

[Victim] admitted that she smoked a very tiny amount of marijuana prior to the Robbery, but denied any other use of drugs or alcohol. [Victim] also admitted that her boyfriend was selling marijuana.

Officer Mertel testified that [Victim] stated that there were a couple of the mason jars with weed inside, two pairs of earrings, and approximately four thousand dollars in cash stolen by the two males. [Victim] testified she told the Officers that the males went through her jewelry, but wasn't sure if anything was missing.

[Victim] testified that she spoke with her boyfriend immediately after this incident and he told [Victim] he was calling the Police. [Victim] testified that it was her decision to take the remaining marijuana, etc., to the car because two people had just broken into her home, and she was afraid that they would return. Subsequently, the Police went into the vehicle and found the items in the car. Officer Mertel testified she was instructed by her boyfriend to remove the drugs, some scales and baggies and to place them in the trunk of the car before the Police arrived. Both [Victim] and boyfriend were criminally charged. However, prior to the Hearing all charges were dismissed. [Victim] stated she was never told [that] if she testifie[d] against [Appellant] that the charges filed against her would be withdrawn. Indeed, at the Preliminary Hearing, the Officers failed to appear.

Trial Court Opinion, 9/29/14, at 3-6 (citations omitted).

Appellant was charged with burglary, robbery, and two counts of criminal conspiracy. Appellant proceeded to a nonjury trial, and the trial judge convicted Appellant of all charges.

The trial court offered the following additional procedural history, which is relevant to this appeal:

Prior to commencement of the Non-Jury Trial on May 13, 2013, [the trial court] called Counsel to sidebar. The [trial court] inquired if there is a Police Officer in this case by the name of Rodney Steele. ADA Carroll informed the Judge that he is a character witness for the defense. Defense Counsel stated: "A character witness. That's all." The Judge disclosed to Counsel that his secretary just informed him she was related to Mr. Steele. Defense Counsel Wymard said he was going to call him, but if that creates a problem, he doesn't have to. ADA Carroll indicated she did not have an issue with it.

The [trial court] then stated to ADA Carroll and Defense Counsel Wymard it would not affect him one way or the other if the witness was related to his secretary. "It's up to you." Defense Counsel elected to proceed with the Jury Trial waiver colloquy without discussing the sidebar matter with [Appellant].

The [trial court] next conducted an extensive on the record colloquy, including the essential elements of a Trial. [Appellant] further signed a written waiver of his right to a Jury Trial Form dated May 13, 2013.

At the Sentencing Hearing on September 17, 2013, an oral Motion for Extraordinary Relief was sought by new Defense Counsel, Lee Rothman. He called previous Defense Counsel, James Wymard to testify. Attorney Wymard testified that there was a sidebar immediately prior to the beginning of the Bench Trial. The Judge disclosed to both Defense Counsel and Counsel for the Commonwealth that it came to his attention that a possible character witness being called by the Defense, Rodney Steele was somehow related to his secretary. The Judge further indicated that if either side wanted to say or do anything they had that option. Attorney Wymard indicated he had no problem proceeding. The Judge stated that the relationship between Rodney Steele, a possible character witness for the Defense, and his secretary would not affect his ruling one way or another. Attorney Wymard admitted that he did not relay this information to [Appellant], nor did [Appellant] inquire about the sidebar conversation. [Appellant] testified that if he would have known that information, he would have changed his mind because he

would not want the Judge to make a decision in an uncomfortable situation, regardless of whether it was in his favor or the Commonwealth's favor. Knowing that information, [Appellant] indicated he would have requested a Jury Trial. The Judge advised both parties of the relationship. Further, the [trial court] stated that this knowledge of the relationship would not impede the [trial court's] ability to render a verdict and just verdict in this case.

Trial Court Opinion, 9/29/14, at 6-8 (citations omitted).

The trial court denied the oral motion and then sentenced Appellant to a term of incarceration of two years and nine months to six years followed by five years of probation for the conviction of burglary, and a consecutive term of incarceration of two years and nine months to six years followed by five years of probation for the conviction of robbery. No further penalty was imposed for the conspiracy convictions. Appellant filed post-sentence motions, which the trial court denied. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Did the trial court abuse its discretion in denying [A]ppellant a new trial where [A]ppellant did not make a knowing and voluntary waiver of his constitutional right to a jury trial due to trial counsel's ineffectiveness; and is counsel's ineffectiveness apparent on the record?

II. Did the trial court abuse its discretion in denying [A]ppellant's post sentence motion that the verdict was against the weight of the evidence insofar as the identification testimony of the alleged victim, who was the only eyewitness, was unreliable due to the effects of stress, the short period of exposure, and focus on the weapon, and the fact that she had a motive for fabricating her testimony?

Appellant's Brief at 5.

Appellant first argues that trial counsel's alleged ineffectiveness regarding the side-bar discussion resulted in Appellant making an unknowing and involuntary waiver of his right to a jury trial. Appellant avers that trial counsel's ineffectiveness was apparent on the record and meritorious and immediate consideration best serves the interests of justice.

Litigation of ineffectiveness claims are not a proper component of an appellant's direct appeal, and are presumptively deferred for collateral attack under the PCRA. *See Commonwealth v. Holmes*, 79 A.3d 562, 578 (Pa. 2013) (establishing a deferral rule for ineffectiveness claims litigated after the decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002)). The *Holmes* Court also recognized two limited exceptions to the deferral rule, both falling within the discretion of the trial court. *Id*. at 563-564. First, the Court held that trial courts retain discretion, in extraordinary circumstances, to entertain a discrete claim of trial counsel ineffectiveness if the claim is both apparent from the record and meritorious. *Id*. at 563. Second, the Court held that trial courts also have discretion to entertain prolix claims of ineffectiveness if there is good cause shown and the unitary review permitted is preceded by a knowing and express waiver by the defendant of the right to seek review under the PCRA. *Id*. at 564.

The facts of this case do not fall within the limited exceptions to the deferral rule carved out by the *Holmes* Court. Our review of the record reflects that, immediately prior to Appellant's sentencing, counsel presented

an oral motion for extraordinary relief claiming that Appellant was entitled to a new trial based on the fact that the waiver of his jury trial was not knowing and intelligent. N.T., 9/17/13, at 4-5. The record does not reflect that Appellant presented the claim as a challenge to the effective assistance of counsel. To the contrary, defense counsel stated that he was **not** presenting a claim of ineffective assistance of counsel. Specifically, Appellant's counsel stated the following:

> [The Assistant District Attorney] had indicated that we're not allowed to ask for ineffective assistance of counsel, and I'm not doing so here today.

N.T., 9/17/13, at 23.

The record further reflects that the trial court denied Appellant's oral motion for extraordinary relief. In doing so, the trial court stated the following:

> [W]ith regard to [Appellant's] oral motion, the Court will not grant the relief requested by counsel. I've listened to the evidence. I think it at best – and I'm not saying it does, but at best it creates an argument of ineffective assistance of counsel which **Commonwealth v. Grant** precludes such an argument at this point in time.

N.T., 9/17/13, at 36-37.

Subsequently, Appellant filed post-sentence motions wherein he specifically raised a challenge to the effective assistance of counsel and alleged that his claim of ineffective assistance was meritorious and apparent from the record. Supplemental Post Sentence Motions, 2/4/14, at ¶ 10A.

However, on February 7, 2014, the trial court issued an order denying Appellant's post-sentence motion.[1]

Accordingly, the trial court did not find the claim to be meritorious and apparent from the record so as to require immediate review. Additionally, Appellant did not allege any "good cause" for seeking unitary review of his ineffectiveness claim and did not state he intended to waive collateral review. Thus, neither of the two exceptions outlined in ***Holmes*** has been met here. Therefore, Appellant cannot seek review of his ineffectiveness claim on direct appeal. ***Holmes***, 79 A.3d 563-564; ***see also Commonwealth v. Britt***, 83 A.3d 198, 204 (Pa. Super. 2013) (ineffective assistance of counsel claim not reviewable on direct appeal because claim was not apparent from record and the appellant did not waive PCRA review). Hence, we dismiss Appellant's ineffective assistance of counsel issue without prejudice to raise this claim in a timely PCRA petition. ***See Commonwealth v. Stollar***, 84 A.3d 635, 652 (Pa. 2014) (dismissing, pursuant to ***Holmes***, the appellant's ineffective assistance of counsel claims raised on direct appeal without prejudice to pursue them on collateral review).

_____

[1] The full text of the trial court's order denying Appellant's post sentence motion provides as follows:

> AND NOW, to wit, this 7th day of February, 2014, it is hereby ORDERED, ADJUDGED, and DECREED that the post sentence motion filed by [Appellant], is Denied.

Order, 2/7/14, at 1.

Appellant's second issue is a challenge to the weight of the evidence. Specifically, Appellant argues that the trial court abused its discretion in denying his post-sentence motion challenging the weight of the evidence because the Commonwealth's sole eyewitness had a motive to fabricate her testimony. Appellant also contends that Victim's testimony was not trustworthy because she was under the influence of marijuana during the incident, was stressed, and was fixated on the presence of a weapon.

In **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 A.2d at 319-20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id**. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

**Widmer**, 560 A.2d at 322, 744 A.2d at 753 (quoting **Coker v. S.M. Flickinger Co.**, 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

- 10 -

*Clay*, 64 A.3d at 1054-1055. "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-880 (Pa. 2008).

Our review of the record reflects that the trial court addressed Appellant's challenge to the weight of the evidence and determined that it lacked merit. Specifically, the trial court stated the following:

> [The trial court] was the finder of facts. It judged the credibility of [Victim's] testimony and found her credible. [Victim] testified that when [Appellant] and her were [face] to face [Victim] realized it was [Appellant]. **T.T. at p. 15.** [Victim] did not have classes with [Appellant], however, he would visit a classmate of [Victim's] in her homeroom. **T.T. at p. 37.** [Victim] overheard conversations they had in their homeroom. **T.T. at p. 50.** Detective Gray corroborated that [Victim] told him she had homeroom with [Appellant's] girlfriend, as [Victim] had explained in Court. **T.T. at p. 76.** [Victim] told numerous Officers involved in the investigation she was positive that one of the perpetrators was [Appellant]. [Victim] indicated that she recognized not only his voice, but his crooked nose. [Victim] stated that she was more than 100% sure of her identification of [Appellant]. Moreover, [Victim] picked [Appellant] out of a photo array and continued to be adamant that the perpetrator was [Appellant].
>
> Therefore, the [trial court] concludes that the verdict is not against the weight of the evidence.
>
> The claim is without merit.

Trial Court Opinion, 9/29/14, at 25-26 (emphasis in original).

The trial court, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant. The trial judge weighed the evidence and concluded Appellant perpetrated the crimes in question. This determination is not so contrary to the evidence so as to shock one's sense

of justice. We decline Appellant's invitation to assume the role of fact finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in determining that Appellant's weight of the evidence claim lacked merit. Thus, this claim fails to provide Appellant relief.

Appellant's ineffective assistance of counsel claim is dismissed without prejudice. Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/5/2015