J. S15028/17

2018 PA Super 71

COMMONWEALTH OF PENNSYLVANIA, :   IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
APPELLANT :
v. :
:
MIGUEL DIAZ :
:
:
:   No. 1811 EDA 2016

Appeal from the PCRA Order May 12, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0006973-2007

BEFORE: BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

OPINION BY DUBOW, J.: **FILED MARCH 23, 2018**

The Commonwealth appeals from the May 12, 2016 Order entered in the Bucks County Court of Common Pleas granting Appellee, Miguel Diaz, a new trial based on numerous ineffective assistance of counsel claims pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. After careful review, we conclude that the PCRA court properly granted Appellee a new trial because Appellee's trial counsel was *per se* ineffective in his handling of Appellee's need for a translator at trial. We, therefore, affirm the PCRA court's grant of a new trial.

The Honorable Robert O. Baldi, who presided over Appellee's PCRA proceedings below, has authored two Opinions, which include the relevant factual and procedural history as well as 104 Findings of Fact ("FF"). ***See***

PCRA Court Opinion (Opinion I), filed 5/12/16, at 1-26, 33-39; PCRA Court

Pa. R.A.P. 1925(a) Opinion (Opinion II), filed 7/22/16, at 1-8.

We base this summary of the facts upon Judge Baldi's findings of facts. In May 2006, fourteen-year-old E.S. told a classmate and later a school guidance counselor that Appellee, her stepfather, had been sexually abusing her for four years with her mother's knowledge and cooperation. The police arrested Appellee.[1]

Appellee retained the services of Gregory Noonan, Esquire, and John Walfish, Esquire, both of Walfish & Noonan LLC. Over the course of their eight-month representation of Appellee, Attorney Noonan met with Appellee for a total of less than one hour. Attorneys Noonan and Walfish failed to consult with one another at any point prior to trial, and each assumed that the other would be responsible for critical components of proper trial preparation.[2] Opinion II at 14-15.

---

[1] Initially, the Commonwealth charged both Appellee and the Complainant's mother with various sex-related offenses, but later dropped all charges against the Complainant's mother because the Complainant refused to testify against her mother.

[2] The PCRA Court summarized their representation of Appellee as "shockingly substandard" and "incompetent[,]" concluding that "only sloth, mismanagement and incompetence" could explain their many failings. The court also found that trial counsel failed to complete important tasks, such as filing timely discovery motions, obtaining important evidence that could exonerate their client, securing testimony from family members who could establish Appellee's innocence, and informing Appellee of when his trial was scheduled to occur. The attorneys missed important court dates, including Appellee's arraignment hearing. When they did show up, they failed to meet

On the morning of the trial and fifteen minutes before the court called the case, Attorney Walfish met his client for the first time. Appellee informed Attorney Walfish that Appellee needed a Spanish-English translator to help him understand the trial proceedings.

Since Attorney Walfish had not consulted with Attorney Noonan about Appellee and Attorney Walfish had spent only fifteen minutes with Appellee, Attorney Walfish did not recognize the extent to which Appellee needed a translator to understand the criminal proceedings.

Attorney Walfish requested a translator and the trial court said that one was not available for the first day of trial. Attorney Walfish then mistakenly informed the trial court that Appellee only need a translator when Appellee testified. The trial court judge then promised not to move forward into testimony until the next day when the court would provide a translator for Appellee. Op. I, FF #71-73.

Despite the judge's promise, the trial court began the trial that day. The lawyers selected a jury and made opening statements to the jury. Most

---

basic responsibilities, such as recording testimony or taking notes during the preliminary hearing. The PCRA court summarized its ruling by stating:

> The decision to grant [Appellee] a new trial was not made lightly. Quite frankly, the system failed both the Complainant, E.S.[,] and [Appellee]. In 33 years of practice before the Bar, and 6 years of experience as a Judge, I have never seen a case as rife with ineffective assistance of counsel[] as this one.

Opinion II at 20.

significantly, the Complainant, the focal point and main witness of the Commonwealth's case, testified fully. Attorney Walfish, not recognizing Appellee's need for a translator, stayed silent, and did not object, as the case proceeded without a translator. Beginning the second day, the court provided a translator to Appellee for the remainder of the trial. Op. I, FF #75-76.

The jury convicted Appellee of Rape of a Child, Rape of a Person Less than 13 years of Age, Statutory Sexual Assault, Corruption of Minors, Endangering the Welfare of a Child, as well as Conspiracy to commit each of those offenses.

When Appellee returned to court for his hearing to determine if he was a Sexually Violent Predator and subsequent sentencing, the trial court noted the presence of a translator because Appellee does "not understand the proceedings well enough to participate in them without an interpreter." Op. I, FF #77.

The trial court ultimately sentenced Appellee to twenty to forty years' incarceration in a state correctional facility.

Appellee filed a direct appeal to this Court, raising claims that, *inter alia*, the trial court erred in failing to provide a translator on the first day of trial. This Court, however, found that Appellee waived his right to challenge the trial court's decision to proceed without a translator because Attorney Walfish failed to object during trial to the trial court's decision.

***Commonwealth v. Diaz***, No. 3243 EDA 2012, unpublished memorandum at 5 (Pa. Super. filed October 1, 2012).

Appellee subsequently filed a PCRA Petition, alleging numerous claims of ineffective assistance of counsel. Among the many errors supporting Appellee's ineffectiveness allegations, Appellee asserted that Attorney Walfish failed to represent Appellee adequately due to, *inter alia*, his failure to secure a Spanish-English interpreter and object to the court's decision to hear testimony on the first day of trial despite the trial court's pledge not to do so. [3]

After hearing testimony, the PCRA Court made thirty-four findings of fact that are specific to Appellee's translator claim.[4] ***See*** Op. I, at 33-39. Most significantly, the PCRA court concluded that Appellee "did not understand what was occurring during the pre-trial motion proceedings, jury selection or opening arguments and did not understand about half of the complainant's testimony." Op. I, FF #92.

The PCRA court based this conclusion on, *inter alia*, testimony about Appellant's language capabilities, education, and use of language. Op. I, FF #78-87, 94-100.

---

[3] As we conclude that Appellee is entitled to a new trial based on the translator claim, we decline to discuss the remaining claims.

[4] The Honorable David Heckler presided over the trial and sentencing, and the Honorable Robert Baldi presided over the PCRA petition.

The PCRA Court also relied upon the testimony of Raymond McConnie, an expert on Appellee's ability to comprehend English. Mr. McConnie testified that Appellee's language proficiency in English "was not adequate to follow what was happening at trial without an interpreter." Op. I, FF #102. Mr. McConnie also opined that "stress at trial tends to dissipate a foreign language speaker's extant ability to understand the language spoke at trial; and as a result, [Appellee] had significant difficulty understanding what happened at trial, and communicating with counsel at trial, when he did not have an interpreter." *Id*.

In addition to the translator claim, the PCRA court identified a "multitude of deficiencies [that] ranged from things that might be characterized as inattentive or negligent to things that were breathtakingly shocking." Opinion II at 11. Because of these findings and others, the PCRA court granted Appellee's PCRA Petition and ordered a new trial.

The Commonwealth filed a timely appeal.

On appeal, the Commonwealth raises nine claims, each addressed to one of the grounds for a new trial identified by the PCRA court. Since we find that Attorney Walfish's handling of the translator issue provided sufficient ineffectiveness to entitle Appellee to a new trial, we need not address the Commonwealth's other issues.

The Commonwealth sets forth the translator issue as follow:

Did the PCRA court err in granting relief by finding prior counsel was ineffective for failing to secure [a translator] during attorney

consultation with Appellee, at trial, and during subsequent interviews with authorities, where Appellee failed to meet his burden and the record reflects that Appellee spoke, understood[,] and comprehended English, and, in fact, admittedly advised counsel that he spoke and understood English?

Commonwealth's Brief at 5.

When reviewing the propriety of an order pertaining to PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014). However, we afford no such deference to the post-conviction court's legal conclusions. *Id*. We thus apply a *de novo* standard of review to the PCRA Court's legal conclusions. *Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011). Further, an appellate court is not bound by the rationale of the trial court and may affirm on any basis if the record supports it. *In re Jacobs*, 15 A.3d 509 (Pa. Super. 2011).

With our standard of review in mind, we turn to the Commonwealth's challenge to the PCRA Court's finding regarding the need for a translator.

Although the Commonwealth purports to raise a single issue, the challenge is comprised of two distinct claims, which we will address in turn.

First, the Commonwealth challenges the PCRA Court's conclusion that Appellant needed a translator to participate in his own defense.[5] Although the Commonwealth argues that there were sufficient facts for the PCRA Court to find that Appellee understood the criminal proceedings and did not need a translator, the argument ignores our standard of review on appeal.

The case law is unwaveringly clear that "we **must** defer to the PCRA court's findings of fact and credibility determinations, which are supported by the record." *Commonwealth v. Spotz*, 84 A.3d 294, 319 (Pa. 2014) (emphasis added). We will not disturb a PCRA court's findings of fact "unless they have no support in the record." *Commonwealth v. Rykard, supra* at 1183. Therefore, the relevant question is not whether the Commonwealth can point to additional evidence that conflicts with the PCRA court's findings. Instead, our focus is on whether there is **any** support in the record for the PCRA court's findings.

---

[5] We respectfully part ways with the Dissent in that we accept the conclusion of the PCRA Court that Appellee could not comprehend the proceedings without a translator. The Dissent, in contrast, concludes that Appellee "could speak and understand English" based on the PCRA Court's finding that Appellee spoke both Spanish and English in phone conversations with family members while incarcerated. Dissent at *6. Although the PCRA Court made that finding, we believe that the findings discussed in the body of this Opinion overwhelmingly support the PCRA's Court's conclusion that Appellee could not understand the criminal proceedings.

As discussed above, the PCRA court made extensive findings of fact to support its conclusion that Appellee could not comprehend the criminal proceedings without a translator. The PCRA Court supports each of its findings with references to relevant portions of the Notes of Testimony from the trial or the PCRA hearings. After a review of the record, we conclude that each of these findings are supported by one or more portions of the record. Therefore, we will defer to these findings and the conclusion that Appellee could not comprehend the proceedings without the assistance of a translator.

With the PCRA court's findings of fact in mind, we turn next to the Commonwealth's claim that Appellee was not prejudiced by Attorney Walfish's failure to request a translator before trial or to make timely objections to the trial court's proceeding without a translator. We reject this argument. Under the facts of this case, Attorney Walfish's lack of comprehension about Appellee's need for a translator leading to his failure to object to proceeding at trial without a translator constitutes *per se* ineffectiveness of counsel.

Article I, Section 9 of the Pennsylvania Constitution guarantees an accused the right to counsel in criminal prosecutions. This section provides,

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage ...

PA Const. Art. 1, § 9. The right to counsel includes the right to the effective assistance of counsel. ***Strickland v. Washington***, 466 U.S. 668, 686 (1984) (citing ***McMann v. Richardson***, 397 U.S. 759, 771, n. 14 (1970)).

There are two types of ineffective assistance of counsel. The first is ineffectiveness under ***Strickland***, as adopted in Pennsylvania by ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987), which requires the defendant to demonstrate that he was prejudiced by an act or omission of his attorney.

The second type of ineffectiveness of counsel is ineffectiveness *per se* under ***United States v. Cronic***, 466 U.S. 648 (1984), decided the same day as ***Strickland***, in which the United States Supreme Court categorized circumstances where the court will presume prejudice and the defendant need not prove it. The presumption is based on the High Court's recognition that there are some "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." ***Id.*** at 658.

In ***Commonwealth v. Britt***, 83 A.3d 198 (Pa. Super. 2013), this Court summarized those cases in which the court found ineffectiveness *per se* by noting that "[i]n Pennsylvania, *per se* ineffectiveness under ***Cronic*** occurs where there was an actual or constructive denial of counsel, the state interfered with counsel's assistance, or counsel had an actual conflict of interest." ***Id.*** at 202-03 (quotation and citation omitted).

In addition, prejudice is presumed where trial counsel's ineffectiveness causes a defendant to be physically absent from his own trial without cause or consent. *Commonwealth v. Tolbert*, 369 A.2d 791, 792 (Pa. Super. 1977). In *Tolbert*, trial counsel erroneously notified the defendant that he would not need to be present on the day his case was called to trial, and told him to appear the following morning instead. *Id.* at 792. When the case was called for trial without the defendant present, the trial judge was "understandably irritated at the turn of events." *Id.* Defense counsel agreed to proceed through jury selection without the defendant present, and the lawyers selected a jury in the defendant's absence. *Id.* The defendant later appealed, averring that trial counsel had rendered ineffective assistance when he agreed to proceed with jury selection without the defendant present. *Id.*

This Court granted Tolbert a new trial because trial counsel had no reasonable basis for advising the defendant not to appear and concluded that trial counsel had been ineffective. This Court did not evaluate whether the outcome of his jury trial would have been different had he been present for jury selection. *Id.* Instead, this Court focused on the defendant's "absolute" right to be physically present in court "during the selection of the jury, along with his right to be present during every other phase of the trial." *Id.* We emphasized that "[t]he right of the accused to participate in the

selection of the jury panel is an essential ingredient of a jury trial under the Pennsylvania Constitution." ***Id.***

Most significant to the instant appeal, the Pennsylvania Supreme Court has addressed the issue of a defendant, although physically present at trial, being constructively absent when the defendant is deprived of a translator. ***See Commonwealth v. Pana***, 364 A.2d 895, 898 (Pa. 1976) ("A defendant's ability to use a translator encompasses numerous fundamental rights. The failure to understand the proceedings may deny him his right to confront witnesses against him, his right to consult with his attorney, or his **right to be present** at his own trial." (emphasis added)); ***Commonwealth v. Wallace***, 641 A.2d 321, 325 (Pa. Super. 1994) ("The [C]onfrontation [C]lause requires that a defendant be given the opportunity to be physically present at trial, that the defendant be competent to assist in his own defense, and that the defendant understand the language of the forum." (citation and quotation omitted)).

As noted above, the PCRA Court's conclusion in the instant case—that Appellee's inability to understand English was such that he could not participate adequately in the proceedings without a translator—is well supported. The ability to understand the proceedings is fundamental to the right to confront witnesses and be present at his own trial. The importance of this right is magnified in a case such as this, where the case rests solely on the testimony of the alleged victim and the defendant. Accordingly, we

conclude that Appellee suffered prejudice *per se* as a result of counsel's failure to ascertain that Appellee needed a translator to understand the criminal proceedings, providing incorrect information to the trial court about Appellee's need for a translator, and failing to object when the trial court proceeded without a translator.

Further, in light of the PCRA court's findings of fact, it is clear that such actions were not based on any reasonable trial strategy, but rather stem from counsel's lack of preparation.

Therefore, Attorney's Walfish's failure to ascertain Appellee's need for a translator that led to Attorney Walfish's failure to object when the trial court proceeded without a translator resulted in a violation of Appellee's Sixth Amendment rights and, thus, is *per se* ineffectiveness. [6]

---

[6] The dissent relies on **Weaver v. Massachusetts**, 137 S.Ct. 1899 (2017), where the petitioner claimed that his counsel was ineffective for failing to object when the trial court only permitted potential jurors, and not the public, in the courtroom during *voir dire*. The U.S. Supreme Court held that when a petitioner argues that his attorney was ineffective for failing to object to alleged violations to petitioner's right to a public trial, it is the defendant's burden to show that that structural error "render[ed the] trial fundamentally unfair." **Id**. at 1911. Underlying the **Weaver** analysis is the premise that the effect of a violation of one's constitutional rights—and such a structural error's impact on the fundamental fairness of a trial—is case-specific, even when first raised in an ineffectiveness claim. **See id**., at 1911-1912. Because the rights at issue in this case involve Appellee's inability to comprehend the criminal proceedings and not the right to keep the courtroom open during *voir dire*, the rights at issue are wholly and strikingly different from those in **Weaver**. Thus, the holding in **Weaver** does not change our analysis and disposition of the instant case.

Attorney Walfish's failures are analogous to the attorney's failure in ***Tolbert, supra***, where he advised his client not to appear at trial. Although Appellee here was physically present in the courtroom during his first day of trial, he was constructively absent because, as the PCRA court found, Appellee needed a translator in order to understand the proceedings and participate in his own defense. In both cases, counsels' actions or inaction caused the defendants to be "absent" from trial.

Thus, we extend the concept of ineffectiveness *per se* to situations like this one in which counsel fails to ascertain the defendant's need for a translator and as a result, incorrectly informs the court about the need for a translator. This results in the defendant not comprehending the criminal proceedings and counsel not objecting to the trial court's proceeding without a translator. We conclude, therefore, that if one's Sixth Amendment rights are to have any meaning, Appellee must be granted a new trial.

Order affirmed.

Judge Ford Elliott joins the opinion.

Judge Bowes files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/23/18</u>