J-S11008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD HIGINBOTHAM | : | |
| | : | |
| Appellant | : | No. 878 WDA 2021 |

Appeal from the Judgment of Sentence Entered November 28, 2011
In the Court of Common Pleas of Fayette County
Criminal Division at No(s):  CP-26-CR-0001323-2009

BEFORE:  PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED:  June 15, 2022**

Ronald Higinbotham appeals, *nunc pro tunc*, from the judgment of sentence imposed following his conviction for third-degree murder[1] after running over his wife with his car. Higinbotham raises several issues on appeal, which he organizes into three broader categories: (1) evidentiary challenges, (2) ineffective assistance of counsel claims, and (3) a cumulative prejudice claim. Because we conclude that Higinbotham's evidentiary challenges and cumulative prejudice claims merit no relief, and we are unable to review his ineffective assistance claims, we affirm his judgment of sentence.

---

[1] *See* 18 Pa.C.S.A. § 2505(c).

Succinctly,[2] Higinbotham and his wife, Carmen, attended a party on the evening of June 20, 2009, during which Higinbotham consumed a significant amount of alcohol. While driving home on Route 40, Higinbotham ran over Carmen with his vehicle, a Hyundai Tiburon with low rider panels along both sides. Higinbotham continued his drive home before calling 911.

Throughout the pre-trial proceedings and during trial, the primary factual dispute concerned how Carmen came to be on the road and how she was run over. According to Higinbotham, the couple began arguing during the car ride, and Carmen repeatedly punched him in the face before jumping out of the moving vehicle. Higinbotham believed Carmen had been sucked beneath his car after she jumped.

By contrast, the Commonwealth's theory of the case was that Carmen was sitting or lying on the road, likely following an argument, and Higinbotham intentionally ran over Carmen with his vehicle. The Commonwealth relied, in part, on testing performed by Pennsylvania State Police Trooper John Weaver, an expert in accident reconstruction. **See** N.T., Omnibus Pretrial Proceeding, 3/29/10, at 31 (wherein defense counsel acknowledged Trooper Weaver's qualifications as to accident reconstruction but noted concerns about the testing methodology). An inspection revealed blood spatter on the driver's side of the front of the vehicle, biological evidence including Carmen's hair and

---

[2] For a detailed recitation of the factual history, **see** Trial Court Opinion, 2/23/12, at 2-6.

blood on the vehicle's undercarriage, a broken light beneath the vehicle, and a fiberglass component from the back driver's side of the vehicle was broken and missing. *See id.* at 38-39, 58. Trooper Weaver conducted several tests using a crash dummy, whereby the dummy was pushed out of Higinbotham's vehicle while traveling at approximately 55 miles per hour. *See id.* at 40-68. Trooper Weaver opined that based on the evidence and damage to the car, Carmen "was struck with the front of the vehicle and completely run over with her body rolling underneath of the vehicle as it traveled over top of her." *Id.* at 68.

On November 12, 2009, Higinbotham filed an omnibus pre-trial motion including, *inter alia*, a motion to suppress any evidence concerning the tests performed on Higinbotham's vehicle using a crash dummy. After a hearing, the trial court denied Higinbotham's omnibus pre-trial motion. Notably, the trial court concluded that Higinbotham's challenge to the crash dummy test evidence was premature and stated it would be better able to assess the admissibility at trial if Higinbotham presented a *Frye*[3] motion.

Following a jury trial, Higinbotham was convicted of third-degree murder. On November 28, 2011, the trial court sentenced Higinbotham to a term of 20 to 40 years in prison, with credit for time served. On direct appeal,

---

[3] *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). "Under *Frye*, novel scientific evidence must be generally accepted in the relevant scientific community before it will be admitted." *Commonwealth v. Bonnett*, 239 A.3d 1096, 1101 n.4 (Pa. Super. 2020); *see also* Pa.R.E. 702.

this Court affirmed Higinbotham's judgment of sentence, concluding there was sufficient evidence to sustain his conviction, and finding his remaining claims waived. ***See Commonwealth v. Higinbotham***, 55 A.3d 139, 32 WDA 2012 (Pa. Super. filed July 17, 2012) (unpublished memorandum). The Pennsylvania Supreme Court denied allowance of appeal.

On August 29, 2013, Higinbotham filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act ("PCRA") alleging ineffective assistance of counsel. Following several years, a multitude of *pro se* filings, and several changes of counsel, Higinbotham retained current counsel, who filed an amended PCRA petition on his behalf on July 2, 2019. After a hearing, the PCRA court determined Higinbotham had effectively been denied his right to a direct appeal due to counsel's shortcomings. Accordingly, on July 12, 2021, the PCRA court reinstated Higinbotham's direct appeal rights, *nunc pro tunc*. Higinbotham filed a *nunc pro tunc* appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[4]

Higinbotham's first two claims raise evidentiary challenges. We review a challenge to the admissibility of evidence, including the introduction of expert testimony, for an abuse of discretion:

> [o]n appeals challenging an evidentiary ruling of the trial court, our standard of review is limited. A trial court's decision will not be reversed absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or

---

[4] The Commonwealth did not file an appellate brief in this matter.

where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Conte***, 198 A.3d 1169, 1180 (Pa. Super. 2018) (citation omitted; brackets in original); ***see also Commonwealth v. Safka***, 95 A.3d 304, 307 (Pa. Super. 2014) (reiterating that admissibility of expert scientific testimony will be reviewed for an abuse of the trial court's discretion).

In his first claim, Higinbotham argues the trial court abused its discretion under ***Frye*** by permitting Trooper Weaver to testify about the results of the crash dummy test. ***See*** Appellant's Brief at 18.[5] He subdivides his first claim into two sub-issues. We conclude Higinbotham failed to preserve these claims for appellate review.

Higinbotham first claims the conditions of the crash dummy test did not reflect Higinbotham's description of the accident. ***See id.*** at 39. In particular, Higinbotham challenges the following test conditions: (1) the Hyundai's speed; (2) the weight, mass, acceleration and wind resistance of the dummy

---

[5] Higinbotham's first issue explicitly challenges the validity and relevance of Trooper Weaver's experiments. ***See*** Appellant's Brief at 2. While Higinbotham includes challenges to Trooper Weaver's status as an expert in his argument, we note that this issue is distinct from Higinbotham's claim that the trial court misapplied ***Frye*** in permitting Trooper Weaver's testimony. ***See Grady v. Frito-Lay, Inc.***, 839 A.2d 1038, 1045-46 (Pa. 2003) ("Whether a witness is qualified to render opinions and whether his testimony passes the ***Frye*** test are two distinct inquiries that must be raised and developed separately by the parties, and ruled upon separately by the trial courts."). Therefore, to the extent that Higinbotham desired to raise a separate challenge to the trial court's decision that Trooper Weaver qualified as an expert, that claim is waived due to Higinbotham's failure to include it in his statement of questions involved. ***See*** Pa.R.A.P. 2116(a).

versus Carmen; (3) the horizontal ejection force when throwing the dummy out the passenger door, rather than a person exiting; and (4) tying open the front passenger door. *See id.* at 39-45.

In his second sub-issue, Higinbotham contends the trial court erred in allowing Trooper Weaver to testify about his experiment because the experiment was novel and did not use a method generally accepted in the relevant scientific community. He highlights concerns about Trooper Weaver's lack of concern regarding important variables like the speed of the Hyundai and Carmen's weight. Higinbotham characterizes Trooper Weaver's methodology as "novel" because Trooper Weaver had never performed a similar test and "the dummy test was so poorly conceived and premised on erroneous assumptions regarding the laws of physics it didn't and couldn't measure what [Trooper] Weaver claimed it measured." *Id.* at 47. According to Higinbotham, he was prejudiced by the admission of the crash dummy tests because it likely impacted the jury's credibility determination. *See id.* at 49-50.

We note that Higinbotham frames the trial court ruling as a denial of a motion to suppress. *See id.* at 18. Yet, it is more accurately a motion *in limine* to exclude Trooper Weaver's testimony based upon *Frye*. *See* Pa.R.E. 103, Comment ("Motions *in limine* permit the trial court to make rulings on evidence prior to trial or at trial but before the evidence is offered."); *see also Commonwealth v. Cohen*, 605 A.2d 1212, 1215 (Pa. 1992) (observing that

the primary purpose of suppression of otherwise admissible evidence is to discourage unconstitutional police procedures).

Generally, a defendant must object contemporaneously to testimony in order to preserve the issue for appellate review. *See Commonwealth v. Parker*, 847 A.2d 745, 749-50 (Pa. Super. 2004). However, there is an alternate method for preserving a challenge to testimony: the motion *in limine*. If the defendant obtains a definitive denial of his motion *in limine* on the record, he does not need to raise a contemporaneous objection to the testimony at trial. *See* Pa.R.E. 103(b).

Here, Higinbotham raised these sub-issues in his omnibus pre-trial motion to suppress. *See* Omnibus Pre-Trial Motion, 11/12/09, at 5 (unnumbered). During the pre-trial hearing, the Commonwealth elicited testimony about Trooper Weaver's qualifications, and defense counsel had the opportunity to cross-examine Trooper Weaver on the issue. *See* N.T., Omnibus Pre-Trial Proceedings, 3/29/10, at 40-48. Defense counsel cited *Frye* and asserted Trooper Weaver could not "give an opinion as to the test that he had never conducted in the past…." *Id.* at 48. However, defense counsel did not object on the basis that the methodology was novel in the field of accident reconstruction. Additionally, defense counsel had the opportunity to cross-examine Trooper Weaver concerning the method used and whether variables such as the weight of the dummy or the speed of the vehicle would affect his conclusion. *See id.* at 45-50.

At the conclusion of the pre-trial hearing, the trial court directed the parties to file briefs on their respective positions. In his brief in support of his omnibus pre-trial motion, Higinbotham challenged Trooper Weaver's opinion based on Pa.R.E. 702 and argued that "Trooper Weaver is not an expert in the field of physics and the results of his 'test dummy' experiment should not be presented to the jury." Brief in Support of Defendant's Omnibus Pre-Trial Motion, 4/20/10, at 5-6 (unnumbered). Higinbotham appeared to challenge Trooper Weaver's qualifications, but he did not specifically challenge the experiment as novel or allege Trooper Weaver used existing scientific methods in a novel way.

In its opinion and order on Higinbotham's omnibus pre-trial motion, the trial court only briefly addressed Higinbotham's *Frye* challenge, concluding it was "premature." Opinion and Order, 6/15/10, at 7. The court then stated, "The trial judge will be in a much better position to assess the admissibility of this evidence, if a *Frye* motion is presented to him/her at the time of trial." *Id.* at 7-8.

Based upon the foregoing, we conclude Higinbotham did not preserve his *Frye* challenge for appellate review by renewing his objection in the absence of a definitive ruling on the matter by the trial court. *See* Pa.R.E. 103(b). Higinbotham's first issue on appeal merits no relief.

In his second claim, Higinbotham asserts the trial court abused its discretion by refusing to allow one of his sons, Kyle, to testify about a separate

- 8 -

incident in which Carmen exited a moving vehicle during an argument. ***See*** Appellant's Brief at 52. Higinbotham avers that Kyle's testimony would be admissible under Pa.R.E. 404 to establish motive. ***See id.*** at 53. Rule 404(b) prohibits the introduction of "[e]vidence of any other crime, wrong, or act … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Such evidence may be admissible to prove, *inter alia*, motive, intent or common scheme, "if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). Higinbotham contends this testimony would have added credibility to his explanation of the events. ***See id.*** at 56.

Initially, we note that while Higinbotham cites to Pa.R.E. 404, he fails to set forth the pertinent language or provide meaningful argument for this claim. ***See*** Pa.R.A.P. 2119(a) (providing that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). Instead, Higinbotham baldly states Kyle's testimony was admissible under the motive exception to Pa.R.E. 404. Additionally, Higinbotham avers the testimony could be used for impeachment purposes, and the exclusion of this evidence denied him of his right to a complete defense; however, Higinbotham similarly fails to develop these assertions. Accordingly, this claim is waived. ***See Commonwealth v. McMullen***, 745 A.2d 683, 689 (Pa. Super. 2000) (stating that "[w]hen the appellant fails to adequately develop his argument, meaningful appellate review is not possible.") (citation omitted).

Moreover, our review of the portion of the notes of testimony cited by both Higinbotham and the trial court on this issue reveals that the parties only specifically discussed Rule 406; defense counsel did not refer to Rule 404 or Higinbotham's right to present a complete defense.[6] The trial court's consideration of this claim is limited to a discussion of Pa.R.E. 406, concerning a person's habit or routine practice. **See** Trial Court Opinion, 9/24/21, at 7. Therefore, it appears from the record that the trial court was unable to address this claim in the first instance; for this reason as well, this issue is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").[7]

---

[6] We decline to scour the voluminous record in this case for additional reference to Rule 404 and the right to present a complete defense in relation to Kyle's proposed testimony. **See Commonwealth v. Cannavo**, 199 A.3d 1282, 1289 (Pa. Super. 2018).

[7] Even if Higinbotham had adequately addressed this claim, we would conclude that it lacks merit. In support of his claim, Higinbotham relies on **Commonwealth v. Powell**, wherein our Supreme Court concluded the trial court did not err in admitting the testimony of the 6-year-old victim's mother over a Rule 404(b) objection. 956 A.2d 406, 418 (Pa. 2008). The **Powell** case is readily distinguishable from the facts at hand. In **Powell**, the victim's mother provided testimony concerning her history of abuse with appellant, her sometimes-paramour who took custody of the victim. **See id.** at 410-11, 418. The Court upheld the introduction of this testimony for the purpose of "establishing the family environment" and to demonstrate that appellant had isolated the victim from his mother. **See id.** at 419-20. Here, in contrast to **Powell**, Kyle's testimony concerned a single incident that occurred several years prior to the incident at issue in this case; accordingly, we would find no error in the trial court's conclusion that the testimony would not establish a motive, intent, or common scheme. **See** Trial Court Opinion, 9/24/21, at 7 (unnumbered).

Higinbotham's next three claims challenge the effectiveness of trial counsel. Higinbotham asserts trial counsel was ineffective for failing to object to (1) opinion testimony provided by Trooper Weaver regarding the manner in which Carmen ended up on the ground; (2) testimony by Dr. Bruce Wright, the Commonwealth's psychiatrist,[8] concerning Higinbotham's competency interview, on the basis that Higinbotham was not afforded the opportunity to consult with trial counsel; and (3) the opinion proffered by Dr. Wright concerning Higinbotham's ability to form specific intent, on the basis that his opinion was not based on Higinbotham's statements during the competency interview. **See** Appellant's Brief at 57-86.

Generally, a claim of ineffective assistance of trial counsel may only be raised on collateral review. **See Commonwealth v. Grant**, 813 A.2d 726, 738 (Pa. 2002). However, while reaffirming this general rule, our Supreme Court has created two limited exceptions, which are within the trial court's discretion:

> First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims. …

---

[8] Higinbotham sought to establish a diminished capacity defense and a diminished capacity through involuntary intoxication defense at trial, and he retained a psychologist to conduct a mental status evaluation. **See** Notice of Defense of Mental Infirmity, 9/3/10; **see also** N.T., Jury Trial, 11/14-15/11, at 846. The trial court then permitted Dr. Wright to examine Higinbotham as the Commonwealth's expert. **See** Order, 9/28/10.

Second, with respect to other cases and claims…, where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

*Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013) (footnotes omitted).

Here, the trial court concluded Higinbotham's claims are not apparent from the record and so meritorious that immediate consideration is warranted. *See* Trial Court Opinion, 9/24/21, at 6-7 (unnumbered); *see also id.* at 6 (unnumbered) (noting that Higinbotham failed to obtain the record from the PCRA hearing). Further, Higinbotham makes no argument concerning the second *Holmes* exception, nor has he explicitly waived further PCRA review. *See Holmes*, 79 A.3d at 564; *see also Commonwealth v. Britt*, 83 A.3d 198, 204 (Pa. Super. 2013) (declining to address ineffectiveness claims on direct appeal where the facts did not invoke the *Holmes* exceptions, and the appellant did not waive his rights to PCRA review). Accordingly, we cannot review Higinbotham's ineffectiveness claims on direct appeal.

In his final claim, Higinbotham contends he was prejudiced by the trial court's and trial counsel's errors,[9] and the cumulative impact of these errors rendered his trial fundamentally unfair. *See* Appellant's Brief at 86-87.

An appellant who raises a cumulative prejudice claim must provide factual and legal support for his argument:

> Where a claimant has failed to prove prejudice as a result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis. Although cumulative prejudice from individual claims may be properly assessed in the aggregate when the individual claims have failed due to lack of prejudice, nothing in our precedent relieves an appellant who claims cumulative prejudice from setting forth a specific, reasoned, and legally and factually supported argument for the claim. A bald averment of cumulative prejudice does not constitute a claim.

*Commonwealth v. Hutchinson*, 25 A.3d 277, 351-52 (Pa. 2011) (citations and quotation marks omitted).

Here, Higinbotham provides no argument to demonstrate how this particular accumulation requires a finding of prejudice. *See id.* Instead, Higinbotham incorporates by reference his previous arguments, *see* Appellant's Brief at 86, and fleetingly restates his belief that he suffered prejudice. This bald assertion does not entitle Higinbotham to relief under a

---

[9] Because we have determined that we cannot review Higinbotham's ineffective assistance of counsel claims on direct appeal, we similarly cannot review the portion of his cumulative error argument based on his ineffectiveness claims.

cumulative prejudice analysis. Accordingly, we affirm Higinbotham's judgment of sentence.

Judgment of sentence affirmed.

Judge Sullivan joins the memorandum.

Judge Olson concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/15/2022