J-A20012-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
v.                     :
:
:
:
SEVILLE ALI                 :
:
Appellant         :   No. 1893 EDA 2021

Appeal from the PCRA Order Entered September 9, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005228-2014

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:         **FILED NOVEMBER 22, 2022**

Appellant, Seville Ali, appeals from the order dismissing his petition filed

pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.

After careful review, we affirm in part, vacate in part, and remand for an

evidentiary hearing.

The trial court summarized the facts of this case, gleaned from

Appellant's non-jury trial held on January 5-6, 2016, as follows:

> This … case involve[s] an incident that occurred on February 22,
> 2014[,] … where Appellant shot … Keith Chapelle in the arm just
> outside [of] Mr. Chapelle's front door.
>
> Prior to February 22, 2014, Mr. Chapelle and Appellant had a
> cordial relationship. Mr. Chapelle ran a moving business with U–
> Haul to help people load and unload moving trucks. Appellant
> completed some moving jobs for Mr. Chapelle's business and
> helped Mr. Chapelle find other workers. While Appellant worked
> for Mr. Chapelle, Mr. Chapelle found out that some of his other

---

[*] Retired Senior Judge assigned to the Superior Court.

workers had noticed that Appellant habitually kept his doors to both his home and car open. Mr. Chapelle thought that these workers were planning on stealing from Appellant. Mr. Chapelle fired these workers and informed Appellant about what happened and that everything had been handled. Afterward[,] Appellant shook his hand and they both went to the corner store together. This occurred just over a month before the shooting.

Mr. Chapelle continued to hire Appellant's friends[,] and Mr. Chapelle had started to hear that Appellant did not like him. During this time, Appellant would have conversations with Mr. Chapelle's wife where he would say that he felt like Mr. Chapelle was trying to set Appellant up. Appellant had told Mr. Chapelle's wife during these conversations … that, "bullets can go through floors." After Mr. Chapelle found out that Appellant had a problem with him[,] he no longer spoke to Appellant. Prior to February 22, 2014, Appellant and Mr. Chapelle had not argued.

On February 22, 2014[,] at 9:00 PM, Mr. Chapelle had returned to his apartment building[,] which he shared with Appellant. Appellant's apartment was directly under Mr. Chapelle's. When Mr. Chapelle arrived [at] the building, Appellant was standing on the porch and then engaged in conversation with Mr. Chapelle. Mr. Chapelle then attempted to walk past him. Appellant … became physical with Mr. Chapelle. Appellant boxed Mr. Chapelle in so that he could not move. The two men beg[a]n arguing and Appellant said that, "If anything happens to him or his family[,] he already told his people 'second floor[.'"]

Mr. Chapelle's wife then came downstairs to bring Mr. Chapelle inside their home. Mr. Chapelle and his wife turned the corner to enter Mr. Chapelle's apartment through the door on the side of the house. While Mr. Chapelle and his wife turned the corner, Appellant entered his apartment. Appellant's girlfriend Crystal then yelled, "No, don't do that." When Appellant came back out of his apartment, he had a silver gun.

Appellant approached Mr. Chapelle with the gun at his side while Mr. Chapelle was at his apartment door. When Appellant was ten feet away from Mr. Chapelle, Appellant raised the gun, pointed it at Mr. Chapelle's chest and shot him in the left arm. As Mr. Chapelle fell to the ground, Appellant advanced towards him and yelled, "If you tell anybody, if you call the cops, I'll kill you. I swear to God I'll kill your family." As Appellant stood over [him], [Mr. Chapelle] heard another click from the gun but no shot was

- 2 -

fired. Appellant left around the corner on the porch and Mr. Chapelle ran inside the home. The police arrived within minutes and took a statement from Mr. Chapelle. Afterward, Mr. Chapelle was transported to Temple Hospital.

The first responding officer, Officer Matthew Lally, entered Appellant's home upon arrival. During a search of the first floor of the apartment for other victims and Appellant, Officer Lally discovered a .380 [caliber bullet] in … Appellant's toilet. Detective James Sloan's investigation revealed a trail of blood leading from Mr. Chapelle's apartment entrance along the porch. Detective Sloan also found a spent .380 cartridge on the corner of the porch. That [fired cartridge] was placed on property receipt number 3130139. After obtaining a search warrant and searching the home, Detective Sloan recovered nine .380 [caliber bullets], eight in … Appellant's bedroom and one in the toilet. The nine [bullets] were placed on property receipt number 3130140.

Tracey Brown [was] the next[-]door neighbor to both Appellant and Mr. Chapelle and was present inside Appellant's apartment just before the altercation. Ms. Brown[] claimed to have seen a knife in Mr. Chapelle's hand. Ms. Brown then went upstairs [to] her apartment[,] which is adjacent to Appellant's apartment. While inside her apartment, Ms. Brown heard one gunshot. When asked about the knife, Ms. Brown could not identify where the knife came from, how Mr. Chapelle was holding it, or what he was doing with it. When questioned by police that evening[,] Ms. Brown did not mention that she had seen a knife. The first time Ms. Brown mention[ed] the knife [was] to Appellant's lawyers. The record does not indicate that a knife was recovered during police investigation.

Upon taking the stand, Appellant claim[ed] that Mr. Chapelle emerged from his apartment to talk to Appellant. Appellant claim[ed] that Mr. Chapelle initiated the conversation by accusing Appellant of making threats against Mr. Chapelle's daughter. During the altercation, Appellant claim[ed] that Mr. Chapelle pushed him against the door to Appellant's apartment. Appellant claim[ed] to have seen a knife. Appellant claim[ed] that after pulling the knife, Mr. Chapelle charged after Appellant through the front door to his home. According to Appellant, Mr. Chapelle struggled with Ms. Brown to get through the door while holding that knife in his hand. As Mr. Chapelle was trying to come through the door, Appellant grabbed his gun and fired a shot at Mr. Chapelle while Appellant was standing in his living room. After

firing the shot, Appellant claim[ed] to have hid[den] the gun behind his mantle four feet above the floor and fled. Upon investigation, Detective Sloan did not recover a gun from the apartment or any spent shell casings in the home.

At the beginning of the trial, defense counsel raised an objection to the use of photographs marked C1 A through J [(hereinafter, "crime scene photos")] on the grounds that he had not seen them before[,] and they had not been passed in discovery. The discovery letter provided by the prosecutor indicated that the [crime scene] photos had been passed in discovery. Upon inquiry from this [c]ourt, defense counsel said that his objection was not strenuous. This [c]ourt offered defense counsel all the time he needed to prepare using the [crime scene photos]. After a recess, defense counsel thanked this [c]ourt and proceedings continued.

Trial Court Opinion, 8/9/17, at 2–6 (citations to the record omitted).[1]

The trial court found Appellant guilty of aggravated assault and possessing an instrument of crime.[2] On April 7, 2016, the court sentenced him to 10-20 years' incarceration for aggravated assault, and to a concurrent term of 2½-5 years' incarceration for possessing an instrument of crime. After Appellant's timely, post-sentence motion was denied by operation of law, he filed a timely notice of appeal. This Court ultimately affirmed Appellant's judgment of sentence on May 29, 2018. ***Commonwealth v. Ali***, 192 A.3d 276 (Pa. Super. 2018) (unpublished memorandum). Appellant did not seek further review by our Supreme Court. Subsequently, on

November 6, 2018, Petitioner filed a timely[,] *pro se* PCRA petition, and was appointed counsel on November 29, 2018. Counsel filed Amended PCRA petitions on July 30, 2019[,] and

---

[1] The trial court's opinion, including the above-omitted citations to the trial transcripts, is available at 2017 WL 10187726.

[2] 18 Pa.C.S. §§ 2702(a) and 907(a), respectively. The trial court acquitted Appellant of attempted murder and multiple firearm offenses.

September 19, 2019. The Commonwealth filed [a] Motion to Dismiss on November 11, 2020. Defense counsel was given an opportunity to respond to the Commonwealth's Motion, but did not do so; rather, he emailed two expert reports dated February 3, 2021[,] and February 8, 2021. On May 5, 2021, the Commonwealth filed [a] response to the reports. [PCRA] counsel was again given an opportunity to respond[,] but did not do so prior to th[e] court's submission of an intent to dismiss notice under [Pa.R.Crim.P.] 907 on July 13, 2021. Following the court's [Rule] 907 notice…, three responses were filed. On September 9, 2021, th[e PCRA] court filed an order dismissing [Appellant's petition]. Petitioner filed a timely[,] *pro se* Notice of Appeal on September 13, 2021, and on September 23, 2021, the court issued an order [directing Appellant to file a statement pursuant to] Pa.R.A.P. 1925(b). [Appellant] filed his [Rule 1925 statement] on October 12, 2021, raising [three claims of error, including numerous subclaims][.]

PCRA Court Opinion (PCO), 1/24/22, at 1-2 (footnote omitted). The PCRA court issued its Rule 1925(a) opinion on January 24, 2022.

Appellant now argues that the PCRA court erred in denying his PCRA petition for the following reasons:

1. Trial [c]ounsel was ineffective in failing to conduct a thorough pre-trial investigation.

2. Trial [c]ounsel was ineffective in failing to recognize that he had been provided with [the] crime scene [photos,] or that [they] existed[,] which he had not seen and did not request prior to trial[,] and in failing to accept the court's offer of a continuance to review and consider those photographs.

3. Trial counsel was ineffective in failing to thoroughly and properly conduct a pre-trial investigation[,] including review[ing] of the photographs, consult[ing] with [Appellant], and recogniz[ing] the need, and request[ing] funds, for an expert to support [Appellant]'s claim of self[-]defense and/or to contest the Commonwealth's claims regarding the location where the complainant was shot and the absence of self[-]defense.

4. Trial counsel was ineffective in failing to object to the hearsay statements presented by the testimony of the complainant[,]

- 5 -

which evidenced [Appellant]'s threats to harm the complainant's child and prejudiced [Appellant].

Appellant's Brief at vi.

> Our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (cleaned up). Furthermore, all of Appellant's claims allege the ineffective assistance of counsel ("IAC").

> [I]n order to obtain relief based on [an IAC] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [the] petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Reed*, 971 A.2d 1216, 1221 (Pa. 2005) (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). We presume that counsel was effective and, therefore, a petitioner bears the burden of pleading and proving each of the three factors by a preponderance of the evidence. *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006). "Failure to prove any prong of this test will defeat an ineffectiveness claim." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014).

### *Crime Scene Photos IAC*

Appellant was represented by Michael Parkinson, Esq., at trial. Appellant's first three claims concern Attorney Parkinson's failure to review

the crime scene photos before trial.  There is no dispute, for purposes of this appeal, that counsel's admitted failure to review the crime scene photos prior to trial meets the arguable merit prong of the IAC test.[3]  Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  **Strickland v. Washington**, 466 U.S. 668, 691 (1984).  It should go without saying that the failure to review crime scene photos provided in discovery, and likely to be used by the prosecution at trial, constitutes a breach of trial counsel's duty to investigate.

Moreover, it is near impossible to conceive of a reasonable basis of why a defense attorney would fail to review crime scene photos in a case headed for a criminal trial.  Neither the PCRA court nor the Commonwealth posit such a reason, and the PCRA court did not hold a hearing to address the question.  However, the record does reveal that trial counsel maintained, at both

_____

[3] It is undisputed that Attorney Parkinson failed to review the crime scene photos prior to trial.  However, we note that Attorney Parkinson maintained at Appellant's sentencing hearing that he had not been provided with the crime scene photos in discovery.  **See** N.T., 4/7/16, at 6.  The trial court also provided an analysis in it Rule 1925(a) opinion that determined that, even if a discovery violation occurred, the court had provided an adequate remedy by offering the defense a continuance in order to review the photos.  However, that analysis appears to have sidestepped the factual question rather than resolved it, as the lower court never conducted an evidentiary hearing (either sitting as the trial court or the PCRA court) to specifically address whether the crime scene photos were provided to trial counsel during discovery.  The Commonwealth provided documentation that it had provided the crime scene photos to the defense in discovery in response to Attorney Parkinson's objection.  **See** N.T., 1/6/16, at 5.  Regardless, neither party is alleging in this appeal that the discovery provided to the defense did not contain the crime scene photos and, therefore, we proceed under the assumption that they were provided to the defense in discovery.

Appellant's trial and sentencing hearing, that the only reason he did not review the photos before trial was because he believed they had not been provided to the defense in discovery. That cannot be a reasonable basis for counsel's failure to investigate when the crime scene photos were, in fact, provided to the defense during discovery.

Thus, in dismissing Appellant's petition, the PCRA court focused its analysis of Appellant's failure-to-investigate claim on the prejudice prong of the IAC test. **See** PCO at 10-19. Initially, we must briefly address Appellant's contention that Attorney Parkinson's failure to review the crime scene photos constituted *per se* ineffectiveness. **See** Appellant's Brief at 13 (stating "[t]rial counsel was *per se* ineffective" because "no reliable adjudication of guilt or innocence could have taken place" when counsel was "unaware, until the day of trial," of the crime scene photos).

Demonstrating that prejudice resulted from the deficient assistance of counsel is generally required, "however, [there are] circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." **U.S. v. Cronic**, 466 U.S. 648, 658 (1984). For instance, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." **Strickland**, 466 U.S. at 692. "Ineffectiveness *per se* may also be shown, *inter alia*, where (1) the state interferes with the assistance of counsel; (2) counsel fails to subject the prosecution's case to meaningful adversarial testing; or (3) counsel's representation is affected by his or her representation of adverse interests."

*Commonwealth v. Rosado*, 150 A.3d 425, 430 n.7 (Pa. 2016). However, the "recognized instances of *per se* ineffectiveness entitling a defendant to automatic relief are extremely narrow[,]" and "the types of actions or inactions that are not subject to *Cronic* are legion." *Id.* at 427–28.

Instantly, Appellant fails to convince us that Attorney Parkinson's conduct falls within the few categories of IAC claims where prejudice is presumed, and he offers no cases supporting that it does. Instead, we conclude that Attorney Parkinson's inadequate investigation does not implicate *Cronic*, but instead falls squarely within the general rule requiring proof of prejudice. *See Commonwealth v. Britt*, 83 A.3d 198, 203 (Pa. Super. 2013) ("[W]here the arguments involve an attorney's failure to adequately prepare based on neglecting to substantively meet with his client, interview witnesses, or investigate the matter, counsel is generally not considered *per se* ineffective.").

Thus, we now examine whether Appellant was prejudiced by Attorney Parkinson's conduct to an extent that relief is warranted. "To establish … prejudice[], the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127–28 (Pa. 2011).

Appellant argues that he was prejudiced in two distinct ways by Attorney Parkinson's representation. First, Appellant argues that, but for his trial counsel's failure to review the crime scene photos, the results of his trial would

have been different, because counsel could have obtained an expert crime scene investigator who would have helped corroborate Appellant's self-defense claim, and aided counsel in cross-examining Detective Sloan. Second, Appellant contends that, had counsel reviewed the crime scene photos before trial, and discussed them with Appellant consistent with his duty to consult, Appellant would have accepted the Commonwealth's plea offer. We will discuss each of these issues in turn.

Appellant posits that the result of his trial might have been different, but for Attorney Parkinson's failure to review the crime scene photos provided to the defense. First, he contends that, knowing that the prosecution intended to introduce the photos, Appellant could have obtained an expert to go "to the scene to obtain more accurate photo[s] which would have supported" his self-defense claim. Appellant's Brief at 19. This prejudice claim is purely speculative, and "bald assertions of … prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011). Appellant argues that his hypothetical photos might have deterred Attorney Parkinson's "having to accept Detective Sloan's conclusions as to what was depicted" in the crime scene photos that were presented at trial, but he fails to develop this argument in any meaningful way. Despite obtaining a forensic investigative expert to aid in the litigation of his PCRA petition, Appellant has not proffered any new photographic evidence of the scene at all, much less evidence that conflicts with what was depicted in the crime scene photos discussed by Detective Sloan. Thus, we

- 10 -

conclude that Appellant's claim of prejudice based upon purely hypothetical photos is mere conjecture.

Second, Appellant contends that, had Attorney Parkinson obtained an expert in anticipation of the Commonwealth's presentation of the crime scene photos, he could have utilized that expert's testimony to better contest the Commonwealth's case against him based on the existing crime scene photos.[4] In support of this claim, Appellant submitted to the PCRA court a report by Robert Tressel, a forensic investigative expert, who "considered the evidence and the court's conclusions." Appellant's Brief at 22. We note that, "[w]here a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." *Commonwealth v. Wayne*, 720 A.2d 456, 470 (Pa. 1998). Appellant averred in his petition that

> the trial court concluded that [fired cartridge casings ("FCCs")] bounce and bound on hard wood floors. … [T]he court concluded, without supporting evidence, that as a result of the bouncing and bounding[,] the FCC came to rest where the photographs showed it because the gun was fired outside. According to Mr. Tressel, however, FCC[]s bounce, roll, can be kicked, and often ricochet

---

[4] Although Attorney Parkinson did briefly review the crime scene photos at trial, his failure to accept the trial court's invitation for a continuance likewise precluded him from obtaining an expert to address the crime scene photos. In either event, the pertinent inquiry into whether Appellant was prejudiced by Attorney Parkinson's deficient investigation into the crime scene photos concerns whether his deficient representation prejudiced Appellant by depriving him of the assistance of an expert at trial to address those photos.

off of walls, doors, shooters, or any other objects they may strike before coming to rest. Additionally, the manner in which a firearm is held when fired can also determine the direction in which the FCC travels. It was the opinion of Mr. Tressel, the only expert to opine in this matter, that neither the positioning of Mr. Chapelle[,] nor that of [Appellant,] could be determined with any certainty. He further opined that[,] absent the recovery of the projectile, it is impossible to determine from where the shot was fired or the direction in which it was fired.

This is particularly important where, as here, the injury to Mr. Chapelle was a "through and through" injury. No projectile was recovered from his body. There is no testimony or other evidence that a projectile was found in or near Mr. Chapelle's door where it would have logically gone had he been standing at his closed door when shot. If Mr. Chapelle was attempting to enter [Appellant]'s apartment when shot, the projectile would have passed through Mr. Chapelle's arm and out toward the street. There is no testimony that any police officer or detective made any attempt to locate the projectile.

Appellant's Brief at 23 (footnote omitted).

Although the parties and the PCRA court cite to Mr. Tressel's initial and supplemental reports, those documents do not appear in the certified record. Indeed, the PCRA court indicates that Appellant merely emailed the reports to the court, *see* PCO at 2, and the lower court's docket sheet makes no notation indicating that the reports had been properly filed below. We note that,

[t]he fundamental tool for appellate review is the official record of the events that occurred in the trial court. To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-

existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. The emphasis on the certified record is necessary because, unless the trial court certifies a document as part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record. Simply put, if a document is not in the certified record, the Superior Court may not consider it.

**Commonwealth v. Preston**, 904 A.2d 1, 6–7 (Pa. Super. 2006) (citations omitted).

Because Mr. Tressel's report and supplemental report are not contained within the certified record, we may not consider them, regardless of the fact that the PCRA court addressed this claim on the merits.[5] Thus, we conclude that Appellant has waived his IAC claim based on prejudice ostensibly resulting from the absence of Dr. Tressel's proposed expert testimony at trial.

_____

[5] The PCRA court was nevertheless unpersuaded that Appellant was prejudiced by Attorney Parkinson's failure to obtain the proposed expert testimony. The court indicated that, sitting as factfinder at Appellant's trial, it had found Appellant guilty after deeming the defense witness's testimony (that Appellant had acted in self-defense) not credible, whereas the court had found the victim's testimony (that Appellant had been the aggressor) credible. **See** PCO at 19. As to the physical evidence depicted in the crime scene photos, the court stated that "Mr. Tressel's reports do nothing to cast doubt on this court's conclusion that neither side had offered a reasonable explanation as to why the fired shell casing was recovered outside [Appellant]'s apartment if he had indeed fired the gun while he was inside of it," and, therefore, there was an "absence of any definitive expert conclusions that would have been helpful to the defense or damaging to the Commonwealth's case…." **Id.** at 18-19. Because the PCRA court had found that proposed expert testimony would not have altered its credibility findings, the court found that Appellant failed to proffer evidence that he had been prejudiced by the absence of Mr. Tressel's expert testimony at trial. Because Mr. Tressel's reports are not in the certified record, we cannot address the court's analysis on the merits.

- 13 -

Next, Appellant contends that Attorney Parkinson's "failure to properly investigate … the photographs pre-trial," and "to advise [Appellant] of the existence of the photographs," rendered counsel's advice regarding whether to accept the Commonwealth's plea offer defective. Appellant's Brief at 17. Because the PCRA court denied Appellant's petition without a hearing, we have no factual record before us regarding the nature of counsel's advice regarding the guilty plea, nor regarding how that advice might have been affected by the crime scene photos. In his amended PCRA petition, Appellant averred "that he would have accepted the plea offer had his counsel discussed the photographs with him and had he been given the opportunity to consider those photographs and their effect on his theory of defense," but the record is devoid of the PCRA court's credibility assessment of that alleged fact due to its failure to hold an evidentiary hearing. Amended PCRA Petition, 7/30/19, at 3 ¶ e n.2.

Despite the PCRA court's failure to allow Appellant to develop the record regarding these factual issues, the PCRA determined that Appellant could not establish prejudice because he

> has not demonstrated how the failure to review the photographs prior to trial played a material role in his trial counsel's analysis of the strengths and weaknesses of the Commonwealth's case and, accordingly, affected [Appellant's] decision-making pertaining to the offer. [Appellant] offers no explanation as to how or why the photographs could have been considered either so helpful or harmful to his defense so as to have affected his consideration of the offer.

PCO at 15.[6]  The court further states that "the photographs did ultimately support the Commonwealth's case," but then strangely reverses its reasoning, indicating that "they were not particularly helpful or harmful to either side…." *Id.*

We cannot accept the PCRA court's analysis based on the record before us.  Due to the court's denying Appellant's petition without an evidentiary hearing, there is no record of what advice Attorney Parkinson gave to Appellant regarding whether to accept the Commonwealth's plea, nor of how that advice might have been affected by trial counsel's pre-trial review of the crime scene photos.  Appellant has averred that he would have accepted the plea offer had he been aware of them before trial.  Thus, if found credible, Appellant's averment would be sufficient to establish that he was prejudiced by counsel's deficient advice because, rather than proceeding to trial where he was ultimately convicted and subjected to a mandatory minimum sentence, he would have accepted a plea resulting in a lower term of incarceration. Furthermore, although the PCRA court states, and the Commonwealth argues, that Appellant failed to adequately explain why knowledge of the crime scene photos would have altered his decision to reject the Commonwealth's plea offer, that is precisely the sort of issue that should have been resolved at an evidentiary hearing.  Appellant has averred that it would have made a

_____

[6] Similarly, the Commonwealth argues that Appellant has not adequately explained how the crime scene photos "were the critical piece in his decision to reject the plea offer." Commonwealth's Brief at 15.

difference. If the court doubts the credibility of that assertion, it should have held a hearing. While "[i]t is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence[,]" this Court must "examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing." *Commonwealth v. Khalifah*, 852 A.2d 1238, 1240 (Pa. Super. 2004). We cannot determine, based on the record before us, that Appellant's averment—that he would have pled guilty had he been advised of the crime scene photos and their potential effect at trial with regard to his self-defense claim—is frivolous.

As discussed *supra*, the PCRA court largely based its finding of guilt on the comparative credibility of the parties. Fair enough. However, even if the crime scene photos did not substantially affect the court's guilty verdict, that is a wholly distinct matter from how Attorney Parkinson's pre-trial review of the crime scene photos might have affected his advice to Appellant regarding whether to accept the Commonwealth's offer and, consequently, whether Appellant would have been more inclined to accept the plea, given that the only physical evidence in this case—the crime scene photos—failed to support his self-defense theory. We cannot simply assume that Appellant and/or Attorney Parkinson should have accurately predicted the relative weight that

- 16 -

the factfinder would have given to that evidence when considering whether to accept the Commonwealth's plea offer.

Alternatively, the PCRA court also found that Appellant was not prejudiced with regard to his rejection of the guilty plea because he "could have accepted the Commonwealth's plea offer at any point prior to trial, but declined to do so." PCO at 15. This is of no moment. As the PCRA court stated in its own summary of the procedural history of this case, Appellant "waived his right to a jury trial and proceeded to a bench trial" on January 5, 2016. *Id.* at 1. It was not until the following day that Attorney Parkinson indicated to the trial court that he had not reviewed the crime scene photos, and that occurred after the Commonwealth's witness, Mr. Chappelle, was sworn in to testify. *See* N.T., 1/6/16, at 4.[7] Thus, nothing in the record supports that Appellant had the opportunity to accept the plea after learning of the crime scene photos, but before the trial began.

For these reasons, we conclude that the PCRA court abused its discretion by denying Appellant's petition without a hearing on these narrow grounds.

---

[7] We note that Mr. Chappelle had not yet answered any questions when Attorney Parkinson first advised the court of the issue with the crime scene photos. "In a criminal jury trial, jeopardy attaches when the jury is sworn. In a bench trial, however, jeopardy attaches **when the trial court begins to hear the evidence**." *Commonwealth v. Micklos*, 672 A.2d 796, 799 (Pa. Super. 1996) (emphasis added). Nevertheless, the Commonwealth moved to incorporate the testimony from the suppression hearing without objection on the previous day. *See* N.T., 1/5/16, at 49. Accordingly, Appellant's trial effectively began before the end of proceedings on January 5, 2016, when testimonial evidence had been incorporated into the trial record. Moreover, nothing else in the record tends to support the notion that the Commonwealth's offer was still on the table at that time.

On remand, the PCRA court should hear from both Attorney Parkinson and Appellant before assessing the credibility of Appellant's assertion that he would have accepted the Commonwealth's guilty plea offer had he been advised by Attorney Parkinson regarding the crime scene photo evidence.

In his final issue, Appellant contends that Attorney Parkinson was ineffective for failing to object to hearsay statements by Mr. Chapelle referencing Appellant's threats to harm Mr. Chapelle's child. Specifically, Mr. Chapelle testified that that Appellant told Mr. Chapelle's wife that "bullets go through floors[,]" and that they "hit babies, too[,]" potentially implying a threat to Mr. Chapelle's child. N.T., 1/6/22, at 22.[8] Attorney Parkinson did not make any objection to this testimony. Appellant contends that this "hearsay evidence had a natural tendency to prejudice the court against [him]." Appellant's Brief at 26.

We note that "[q]uestions concerning the admissibility of evidence are within the sound discretion of the trial court[,]" and "[h]earsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Laich*, 777 A.2d 1057, 1060 (Pa. 2001) (citation omitted). "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

---

[8] Mr. Chapelle later testified that he did not take that threat seriously at the time. *Id.* at 23.

The PCRA court determined that even if those statements were inadmissible hearsay, Attorney Parkinson had several reasonable bases for not objecting. First, the court reasoned that an objection "would draw further attention to this evidence." PCO at 20. Second, the court opined that "[c]ounsel may have also relied on the court's ability to disregard any inadmissible evidence, given that this was a bench trial in which the court assumes the role of the factfinder." *Id.* Third, the court indicated that Attorney Parkinson may have anticipated that "any objection would simply prompt the Commonwealth to call Mr. Chapelle's wife herself to testify about Appellant's threatening statements." *Id.* Finally, the court suggested that Attorney Parkinson declined to object because he subsequently utilized those statements in cross-examining Mr. Chapelle in a manner that suggested that Mr. Chappelle had a motive for attacking Appellant, thereby supporting Appellant's claim of self-defense. *Id.* at 22.

While these are plausible reasons for counsel's failure to object, "[i]n recent years, [our Supreme] Court has expressed a preference for an evidentiary hearing" when addressing whether an attorney had a "reasonable basis for his or her actions or inactions." ***Commonwealth v. Cousar***, 154 A.3d 287, 299 (Pa. 2017). Essentially, the PCRA court speculated as to why Attorney Parkinson did not object, a matter that could have been easily resolved with an evidentiary hearing.

The Commonwealth offers an alternative argument for affirming the PCRA court's denying relief on this claim on the arguable merit prong of the IAC test:[9]

> The victim's testimony recounting how other people told him that [Appellant] said bullets could travel through floors and hit babies was not offered to prove the truth of the matter asserted. At no point did the Commonwealth attempt to use those statements to prove that bullets could travel through floors or hit babies or that [Appellant] shot a baby through a floor. Rather, those statements were offered only to explain the hostility between the victim and [Appellant]. That background helped the trial court understand why defendant and the victim would have a shouting match on the front porch prior to the shooting. Trial counsel cannot be ineffective for failing to object to this non[-]hearsay testimony as hearsay. *See Commonwealth v. Pearson*, 685 A.2d 551, 556 (Pa. Super. 1996) (*en banc*) ("[C]ounsel can never be found to have been ineffective for failing to raise a meritless claim.").

Commonwealth's Brief at 18-19.

We agree with the Commonwealth's argument. At no point during Appellant's trial did the Commonwealth attempt to prove or utilize the truth of the matters asserted in the contested testimony. Rather, that testimony arose as Mr. Chappelle tried to explain why his relationship with Appellant had deteriorated leading up to the incident on February 22, 2014. *See* N.T., 1/6/16, at 21-22. Mr. Chappelle even testified that he believed the statements were "mindless talk[,]" that Appellant was "trying to be tougher," and that Mr. Chappelle "didn't take any of it serious[ly]." *Id.* at 23. Thus, we agree with

---

[9] "It is well settled that where the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself." *Commonwealth v. Singletary*, 803 A.2d 769, 772–73 (Pa. Super. 2002) (cleaned up).

the Commonwealth that these statements were not objectionable on hearsay grounds because they were not offered to prove the truth of the matter asserted. **See Commonwealth v. Busanet**, 54 A.3d 35, 68 (Pa. 2012) ("An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement."). Thus, Appellant is not entitled to relief on his final claim.

In sum, we conclude that Appellant has failed to demonstrate that the PCRA court abused its discretion in denying his PCRA petition without a hearing in all but one respect—Appellant should have been granted an evidentiary hearing to determine if he was prejudiced by Attorney Parkinson's failure to review the crime scene photos before advising him with respect to the Commonwealth's plea offer. Thus, we vacate the order denying relief solely with regard to that narrow claim, and remand for further proceedings consistent with this memorandum. Otherwise, we affirm the order denying relief in all other respects.

Order **affirmed** in part, **vacated** in part. Case **remanded**. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2022

- 21 -